## PHŒBE THOMPSON v. A. D. CARMICHAEL.

ERROR TO THE COURT OF COMMON PLEAS OF MERCER COUNTY.

Argued October 10, 1888—Decided October 22, 1888.

(a) In 1854, land was conveyed in trust for the use of a married woman and her husband, for their lives, without liability for their debts, and at the death of the survivor for the use of the heirs of the body of the wife in fee.

(b) In 1858, the cestuis que trust, being in possession, conveyed the land in an attempt to bar the supposed fee tail, and their grantee and those claiming under him held under such conveyance from the date thereof until 1885.

1. In such case, the trust under the deed of .1854 being active, the legal title was in the trustee therein, and the estate created was barred, even as against the wife, by the adverse possession held under the deed of 1858 from the cestuis que trust.

2. The wife, though under coverture. until 1883 and having then issue of her body living, could have enforced her estate through the trustee, and was therefore under no disability with the protection of § 1, act of April 22, 1856, P. L. 532.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 69 October Term 1888, Sup. Ct. ; court below, No. 59 March Term 1887, C. P.

On February 17, 1887, a summons in ejectment was issued by A. D. Carmichael against Phœbe Thompson, to recover a

lot of ground in Worth township, containing about 50 acres. The plea was, not guilty.

On December 3, 1887, a case stated was agreed upon and filed showing in substance, that on April 16, 1854, John Carmichael, Sr., then the owner of the land in dispute, in consideration of $10, and of love and affection had for his daughter Phœbe Thompson, conveyed it to Aaron Carmichael, his heirs and assigns forever, in trust "for the use of said Phœbe Thompson and her husband, Elijah Thompson, for and during their natural lives and the life of the survivor of them, with the right to the said Phœbe and Elijah to occupy and improve the same; but the estate hereby granted, bargained and sold in trust as aforesaid, to be in no way or manner liable, either by attachment, execution, or any other legal process, for the sole or joint debt or debts of the said Phœbe and Elijah heretofore or hereafter to be contracted by them; and from and after the decease of the said Phœbe and Elijah, for the use of the heirs of the body of the said Phœbe Thompson, formerly Phœbe Carmichael, forever."

The said deed was duly recorded, and Phœbe Thompson and her husband went into possession of the land and held the same until January 11, 1858, when by deed of general warranty they conveyed it to John Carmichael, Sr., the former grantor. This deed was in the usual form, with the addition after the description of the land of the following words: "Being the same piece of land conveyed to the said Elijah Thompson and Phœbe, his wife, late Phœbe Carmichael, in fee tail, by deed dated 16th day of April, 1854, and it is hereby and herein intended by the said Elijah Thompson and Phœbe Thompson, late Phœbe Carmichael, hereby to debar the estate tail in possession, reversion or remainder, and to defeat the same as fully and effectually as if the same had never been created, that they, the said Elijah Thompson and Phœbe, his wife, and the heirs of her body, have and had in the said piece or parcel of land herein described and granted, or intended so to be."

John Carmichael, Sr., then took possession under the last mentioned deed, and occupied the land as his own until his death, leaving a will, dated March 19, 1861, and duly admitted to probate on January 29, 1868, in which will he devised the land to John Carmichael, Jr.

John Carmichael, Jr., took possession of the land after the death of the testator and occupied it by himself and tenants until February 16, 1885, when by quit-claim deed in the ordinary form he conveyed the same to A. D. Carmichael, the plaintiff herein.

Elijah Thompson, the husband of Phœbe, died on December 28, 1883; his widow Phœbe then had and still has heirs of her body living.

On or about April 1, 1885, the premises being then vacant, the said Phœbe Thompson, defendant herein, went into possession of the land and was and continued to occupy it as her own when this suit was brought.

To No. 73 June Term 1885, C. P., A. D. Carmichael, the grantee of John Carmichael, Jr., brought ejectment against Phœbe Thompson, for the land, and on trial thereof a verdict was had in favor of the defendant. Upon a writ of error to No. 60 October Term 1885, Sup. Ct., the judgment of the court below was affirmed, but the only question then tried and decided was, whether the legal title was in Aaron Carmichael, the trustee in the deed of April 16, 1854, or in the cestuis que trust, and it was decided to be in the trustee : unreported, except as Carmichael v. Thompson, 5 Cent. R. 500.

On February 3, 1888, the court, MEHARD, P. J., filed the following opinion and decree :

There are two questions raised by the facts and submissions in this case : First, whether the plaintiff has a valid title to the land in suit by virtue of the deed dated January 11, 1858, from defendant and her husband to John Carmichael, and, second, whether he has a valid title under the statute of limitations.

The first question was considered and fully discussed in the opinion delivered at No. 73 June Term 1885, which was between the same parties and for the same land. The second question is raised here for the first time. In the former case, it was held that under the deed from John Carmichael to Aaron Carmichael dated April 16, 1854, the grantee took the land in a special, active trust, and hence the deed from Phœbe and Elijah Thompson, the cestuis que trust, was inoperative. This decision was affirmed on writ of error by the Supreme Court.

But the question arises again properly in this case, and it is our duty again to consider it. The learned counsel for plaintiff asks a contrary ruling, and cites in support of his position certain authorities, the strongest in his favor being Keyser's App., 57 Pa. 236. That was a case where a testator devised an estate in fee simple, with all the incidents of ownership in the cestuis que trust, but provided that it should not be liable for their debts. This was held to be a dry trust, and the provisions as to debts fell. In this case there is an equitable interest for life given to Phœbe Thompson and her husband. Elijah, with contingent remainder to the heirs of the body of Phœbe. For as the heirs of the body of Phœbe could not take by inheritance the entire estate limited to Phœbe and Elijah Thompson, the rule in Shelley's case would not apply : 1 Washb. on Real Prop., 105, et seq. *77, *78, *79. Hence this case is within the distinction recognized in Keyser's App., 57 Pa. 241. But aside from the distinction, the facts of the case at bar are covered by the later decisions of the Supreme Court in Rife v. Geyer, 59 Pa. 393 ; Phila. Trust etc. Co. v. Guillou, 100 Pa. 254. To say nothing of the affirmance of the opinion rendered on these identical facts, if the deed from John Carmichael to Aaron Carmichael created an active trust, the seisin would be in the trustee : 2 Washb. Real Prop., 457, 488. The cestuis que trust would not, strictly speaking, have an estate : Pomeroy's Equity, §§ 153, 374, but the legal title, not being affected by the statute, would remain in the trustee. Hence the deed from Phœbe and Elijah Thompson to John Carmichael, being an attempt on the part of the grantors to convey an estate which they did not have, was invalid.

The deed from the Thompsons to John Carmichael was in form a general warranty deed in fee simple for the land in suit. Under it John Carmichael went into possession of the land in 1858. He and those claiming under him held it, claiming title, until April, 1885, twenty-seven years. This deed was evidently made and accepted, possession of the land taken and maintained, under a misconception of the estate of the Thompsons and their power to convey.

Possession taken under these circumstances could not have been in recognition of the trust, but was certainly adverse to both trustee and cestuis que trust. It was maintained for

twenty-seven years in such a way as to give title to the dis-seisors if there had been a trust and the cestuis que trust had been sui juris. Although a court of chancery will not apply the statute of limitations as between a trustee and cestuis que trust, it is now well settled " that a stranger by an adverse possession as against a trustee, continued for the requisite period of time, may bar both the legal estate of the trustee and the equitable interest of the cestuis que trust:" 3 Washb. Real Prop., 163, § 46 a, *501: Smilie v. Biffle, 2 Pa. 52; Maus v. Maus, 80 Pa. 203; Perry on Trusts, § 848; Yorks' App., 110 Pa. 69.

The plaintiff then has a good title as against the defendant by virtue of the adverse possession of himself and those under whom he claims, unless the fact that defendant was feme covert until December 28, 1883, preserves the estate to her.

In considering this question it is to be borne in mind that there was no implied trust under the conveyance to John Carmichael made in 1858. That deed was not made by the trustee, but by the cestuis que trust, and was in effect an assertion of the latter's right to convey and denial of the trustee's title. It was in proper form to convey the estate, if that had been in the cestuis que trust. But its operation was prevented for the very reason that the estate, and the seisin incident to it, were in the trustee. When John Carmichael took possession of the land under this deed it was a disseisin of the trustee. He had an immediate right of entry in order to protect the land for the trust. It is true the cestuis que trust had an interest, but it was one they could work out only through the trustee. They had no remedy except to procure the trustee to bring an action upon his legal title to recover possession: 1 Perry on Trusts, § 346. But they, as well as the trustee, apparently recognizing John Carmichael's title, neglected to disturb his possession until long after twenty-one years had run from the time it began. After this length of time the trustee's right of entry was gone under the statute of March 26, 1785, 2 Sm. L. 300, and as the interest of the cestuis que trust was dependent upon the right of the trustee to recover possession, it would likewise be lost.

This question is hardly open, in view of what was said in Smilie v. Biffle, 2 Pa. 52. There a defective conveyance of

land was made by one of several trustees. The cestuis que
trust for life was a feme covert. Possession was taken and
maintained for the length of time required by the act of 1785
to give title. On suit brought, after the death of the feme
covert, by a child who was a cestui que trust in remainder,
the point was submitted, " That if Jane Craig, the feme covert,
died within the twenty-one years, the plaintiff could recover."
But the Supreme Court said in reply: " When the cestui que
trust and trustee are both out of possession, for the time lim-
ited, the party in possession has a good bar against both. It
would strike me to be an anomaly that the owner of the legal
estate should be barred, and the owner of the equitable title.
whether his interest be an interest in possession or by way of
remainder, should, nevertheless, be entitled to enter. Equity
follows the law, and courts of equity have adopted the act of
limitations by analogy. If a trustee is negligent of his duty
(as he may be), the cestui que trust is not without remedy.
That there are exceptions in favor of infants in cases of im-
plied trusts may be conceded. But this is not a case of that
description, and there is nothing to exempt it from the opera-
tions of the rule."

This decision was recognized and affirmed in Maus v. Maus,
80 Pa. 194, 203. The ground of it takes in this case; for if
the interest of a cestuis que trust in remainder would not sur-
vive an adverse possession, maintained against the trustee for
twenty-one years, neither would the interest of a cestuis que
trust for life, even though she were feme covert. It follows
that the defendant has lost her interest in the land in suit.
The justice of this conclusion is made clear by the fact that
defendant conveyed the land to defendant's ancestor in title in
1858, for a valuable consideration, to wit: $300, presumably
all it was then worth. Judgment is accordingly given in favor
of plaintiff and against defendant for the land described in
the writ and costs.

Thereupon the defendant took this writ and assigned that
the court erred in deciding that the statute of limitations gave
title to the plaintiff for the land in dispute, and in entering
judgment for the plaintiff on the case stated.

*Mr. S. R. Mason,* for the plaintiff in error:

The case presents but the single question, whether the statute of limitations runs against persons enumerated in the disability clauses in the proviso to § 4, act of March 26, 1785, 2 Sm. L. 300, and the proviso to § 1, act of April 22, 1856, P. L. 532.

1. The statute of limitations is one of repose, and the courts would not have sustained it on any other grounds. Twenty-one years is the usual limit, but, in order that injustice might not be done to persons under disabilities, the proviso to the act of 1785 was enacted, though without fixing the limit when those persons would be barred; hence the supplement of 1856 fixing the limit at thirty years, beyond which period the statute is a complete bar to all classes of cases.

2. This court has already decided that the deed to John Carmichael, Sr., of January 11, 1858, was a nullity, as the legal title was in Aaron Carmichael, the trustee. Mrs. Thompson, therefore, had nothing to convey, so that at the time of the first suit and ever since, she was clearly within the statutory period of thirty years. In considering these statutes, there is an unbroken line of authorities uniformly holding that persons, under the disabilities enumerated, have thirty years within which to bring their action or defend their right: Pratt v. Eby, 67 Pa. 396; Hunt v. Wall, 75 Pa. 413; Updegrove v. Blum, 117 Pa. 259; Hogg v. Ashman, 83 Pa. 80; Miller v. Franciscus, 40 Pa. 335; Miller v. Ege, 81* Pa. 352; Huffman v. Huffman, 118 Pa. 58. Smilie v. Biffle, 2 Pa. 52, and Maus v. Maus, 80 Pa. 194, were decided on a different principle altogether, and neither of them made any reference to the act of 1856.

*Mr. J. G. White,* for the defendant in error:

The opinion of the court below is so conclusive that further argument is superfluous. The facts as admitted show adverse, continued and hostile possession of this land in the plaintiff below, and those under whom he claims for a period of over twenty-seven years. If Phœbe and Elijah took title under the deed of John Carmichael, dated April 17, 1854, then their deed to John Carmichael, dated January 18, 1858, is a perpetual bar to the right of the defendant below to enter upon

the land at any time. If, on the other hand, as is held by the court, that title vested in the trustee, he is barred by the statute; on either horn of the case, the defendant below had no right to enter upon the land.

OPINION, MR. JUSTICE HAND:

The facts of this case are presented in a case stated. John Carmichael, Sr., was the owner in fee of the lands in controversy in 1854, and was the common source of title. He conveyed the same in April, 1854, to Aaron Carmichael, in trust, for the use of Phœbe Thompson, daughter of John, Sr., and defendant below, and Elijah Thompson, her husband, for and during their natural lives and the life of the survivor of them, with the right to occupy and improve the estate, but the same to be in no way liable for the sole or joint debts of Phœbe or Elijah, and from and after the decease of the said Phœbe and Elijah, for the use of the heirs of the body of the said Phœbe forever. They took possession under said deed, and held the same until January, 1858, when by deed of general warranty they reconveyed the same to John Carmichael, Sr., for the consideration of three hundred dollars. Under this deed John, Sr., took possession and occupied as his own until he devised it to John, Jr., by his last will and testament, dated March, 1861, and probated January, 1866. John, Jr., took possession and occupied it by himself and tenants until February, 1885, when he conveyed it to A. D. Carmichael, the plaintiff below. On or about April 1, 1885, the premises being vacant the defendant, Phœbe Thompson, went into peaceable possession, and has occupied it since, claiming title.

This case has been in this court before on the single question whether the title was in the trustee or cestuis que trust. It was held to be an active trust and the title in the trustee. The defendant was a feme covert when she executed the deed of January, 1858, and remained so until December, 1883, when her husband died. She then had and now has heirs of her body living. The sole question before this court in this controversy is whether the possession of the plaintiff and those under whom he claims, continued for twenty-one years and upwards, would give title under the statute of limitations of March 26, 1785. It is claimed by the plaintiff in error that

the possession must be continued during thirty years, under the act of April 22, 1856. The learned judge of the court below held that title was acquired under the former statute, and in this he was clearly right. The legal title was in the trustee of Phœbe Thompson. Both he and she, through him, had a remedy at law to assert and maintain her rights. The possession of John Carmichael under the deed of 1858, was a disseisin of the trustee, and being kept up for twenty-one years it ripened into a perfect title. So far as Phœbe was concerned, she was really under no disability; she could look to her trustee, and through him regain her lost possession within the proper time. In the case of Huffman v. Huffman, 118 Pa. 58, cited by the learned counsel, there was no trustee, and the legal disability existed as contemplated and guarded by the act of 1856.

Judgment affirmed.