C. I. T. Corporation *v.* Flint, Appellant, et al.

Submitted January 9, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frank Streeper, Jr.,* for appellant.

*Samuel Gorson,* for appellee.

OPINION BY MR. JUSTICE STERN, March 22, 1939:

These proceedings originated in a bill in equity to set aside a conveyance of real estate by defendant George Flint and his wife on the ground that it was in fraud of plaintiff's rights as a judgment creditor of the husband and should be declared void in accordance with the Fraudulent Conveyance Act of May 21, 1921, P. L. 1045. The property was owned by the Flints as tenants by entireties. Mrs. Flint was seventy-one years of age and ill of cancer, and she and her husband, apparently realizing that in the event of her death he would succeed to the title and the property would thus become subject to plaintiff's judgment, executed a deed to defendant J. Oliver Murphy in trust "to permit the said grantors and or the survivor of them, for and during the term of their natural lives to occupy, use, and enjoy the said premises, the said grantors however, to pay all taxes, water rents, interest on mortgages or other charges against the said premises and to keep and maintain the same in good order and repair, . . . so that neither the said prem-

ises nor the income derived therefrom shall at any time be subject to the control of, or liable for the debts and engagements of the said grantors, but the corpus of the said trust shall be held intact to protect the interests in remainder as hereinafter expressed"; upon the death of either of the grantors the survivor was to be permitted to occupy, use, enjoy or rent the premises, for and during the term of the life of the survivor, upon the same conditions and subject to the same restrictions as above described; upon the death of both of the grantors, the trustee was to convey the premises to their two named daughters, with contingent gifts to grandchildren if the daughters or either of them did not survive the grantors; the grantors reserved the right at any time "to revoke this trust either in part or in its entirety, or from time to time to alter or amend the same in any manner that to them shall seem fit or proper, and this right shall extend to the survivor of the said grantors."

Mrs. Flint died seven months after this deed of trust was executed and three months after it was recorded. The bill in equity averred that by the conveyance Flint became insolvent. The parties agreed upon a case stated in which the question submitted for the determination of the court was whether the conveyance was in fraud of creditors. The court answered in the affirmative, and decreed that the deed of trust was void as to plaintiff and all other creditors of Flint, that Flint was still the owner of the whole beneficial interest in the property under the deed of trust, "which said trust is a dry trust, and is executed by the Statute of Uses, so that the entire title, both legal and equitable, is now vested in the said George Flint," and that plaintiff's judgment was a valid lien against the property. In his adjudication the learned chancellor said: "The entire beneficial interest in the property, including complete and absolute control over its disposition through the power of revocation reserved in the deed, is retained by Flint and his wife, and nothing but the bare legal title to the trust res is

conveyed to the trustee. The husband and wife retain the substance of their tenancies, their equitable estates being the exact equivalent in beneficial use of the entireties which they originally owned, and, upon the death of both, the only duty resting upon the trustee is to convey the legal title to the daughters of the defendant; and finally, to insure their complete and absolute control over the property during their lifetime, the grantors reserve to themselves the right to revoke the trust, or to alter or amend its terms at pleasure. There could have been only one purpose for creating such a trust, namely, to preserve for the defendant Flint, by the technical conveyance of a bare legal title to a third person, that immunity of his property from liability to seizure by his creditors which he was enjoying while his wife was alive, and which he was about to lose by surviving her. We have no hesitancy in concluding, therefore, that the conveyance in this case was conceived and executed with an intent which was fraudulent in fact as well as by presumption of law."

In our opinion the case stated was improperly decided. We believe the error of the court to have resulted partly from failing to give due consideration to the anomalous, indeed unique, nature of tenancy by entireties, and partly from confusing the legality of the conveyance with its effect upon the title.

There can be little doubt that if Flint had owned the property either individually or as a tenant in common and had executed such a deed of trust, the conveyance would have been in fraud of both his existing and future creditors. One cannot create a spendthrift trust in property for his own benefit, nor by any other device exclude creditors while retaining the beneficial interest and the incidents of ownership and control, as, for example, by settling it in trust for himself for life, free from his debts and obligations, with remainder to the use of his appointees by will, and, in default of such appointment, to the use of his heirs: *Mackason's Ap-*

peal, 42 Pa. 330; *Ghormley v. Smith,* 139 Pa. 584; *Nolan v. Nolan,* 218 Pa. 135; *Egbert v. de Solms,* 218 Pa. 207; *Rienzi v. Goodin,* 249 Pa. 546; *Benedict v. Benedict,* 261 Pa. 117; *Patrick v. Bingaman,* 2 Pa. Superior Ct. 113; *Philadelphia v. Meredith,* 49 Pa. Superior Ct. 600. But in some of these very cases it was pointed out —and it is, of course, the law—that an owner may create a trust for some *other* person so as to give him the enjoyment and beneficial ownership of the property, with control over its ultimate disposition, but protecting it against levy or attachment by his creditors: *Mackason's Appeal,* supra, 339; *Ghormley v. Smith,* supra, 592; *Patrick v. Bingaman,* supra. In the last named case it was said (pp. 118, 119) : "In the matter of recourse to the trust estate by creditors of the beneficiary, there is a radical difference between a trust in which the settlor and the beneficiary are different persons and one in which they are the same person. In the former, the estate may be settled to the use of the beneficiary without being in any manner subject to his liabilities. . . . Such a settlement is in no sense a conveyance in fraud of the beneficiary's creditors, since it is not his property but that of the settlor which is conveyed. It becomes the property of the beneficiary only so far as it is made such by the deed of settlement, and with only such control, incidents of ownership, and liability to creditors, as are therein given it. As the estate, in the settlor's hands, was not liable to creditors of the beneficiary, it is no fraud to deny them recourse to it in the hands of the trustee."

The vital feature of the present case is that the property was not one in which Flint had an individualized interest. The title, legal and equitable, was in what may be regarded as a distinct legal entity, consisting of the unified personalities of the husband and wife, somewhat as if—although the analogy is, of course, a crude one— the spouses together constituted a corporate body. Tenancy by entireties is a venerable institution of the com-

mon law;[1] it rests upon instincts which form the very warp and woof of our domestic and social fabric. In such a tenancy each spouse is seized *per tout et non per my*. There is but one legal estate, which, by a long course of judicial decisions, has been buttressed against inroads attempted either by the parties themselves or by their individual creditors. Thus, a purchaser at sheriff's sale, under a judgment against the husband, does not acquire any right to possession, joint or exclusive, during the life of the wife: *McCurdy and Stevenson v. Canning*, 64 Pa. 39. Where there is a judgment against the husband, the surviving wife takes the property free of it, nor can a tenancy by entireties be changed into one in common by any act or deed of the parties so long as they remain the owners of the property and the marriage relation continues: *Hetzel v. Lincoln*, 216 Pa. 60. A trustee in bankruptcy of the husband is not entitled, during the life of the wife, to any part of the principal or income of the estate: *Meyer's Estate (No. 1)*, 232 Pa. 89. The wife's enjoyment of the property cannot be restricted in order that the husband's creditors may be protected: *Meyer's Estate (No. 2)*, 232 Pa. 95. The husband's trustee in bankruptcy cannot restrain the husband and wife from alienating the property: *Weiss v. Beihl*, 232 Pa. 97. It is true that in *Fleek v. Zillhaver*, 117 Pa. 213, it was held that when the wife died the property could be sold on execution on a judgment which had been recovered against the husband, but this was explained in *Beihl v. Martin*, 236 Pa. 519, as meaning merely that in an estate by entireties each spouse has a contingent "expectancy," consisting of the right of survivorship, which may be the subject of a potential lien, but such lien fastens upon the property itself only when the expectancy is realized. In this same case of Beihl v. Martin it was held that the husband and wife can convey the

---

[1] See *Madden v. Gosztonyi Savings & Trust Co.*, 331 Pa. 476, 480.

property free from judgments and the effect of bankruptcy proceedings against the husband and also from any contingent interest or ownership by the trustee in bankruptcy in the event of the husband surviving the wife. In weighing the argument that the exemption of the property from executions and liens directed against the husband might be an invitation to fraud and operate as a shield of protection against the demands of his creditors, the court pointed out that his creditors had no right, when they extended credit, to rely upon the security of a property owned by entireties.

Since, therefore, the owner of a judgment against the husband holds it subject to its possible extinction as a lien by a change of title caused either by the act of the parties or by the survivorship of the wife, he has no standing to complain of a conveyance which prevents the property from falling into his grasp. As long as the title was held by entireties it was not an asset of Flint available for his creditors. They could not have attached it or his interest in it. It could have been conveyed by him and his wife so as to be forever beyond their reach. They could seize upon it only if, on the death of the wife, it had not been conveyed and the husband survived. He was not under a legal duty to see that this possible interest was preserved for the benefit of his creditors. The situation is wholly dissimilar from the more familiar one where the owner of property which is subject to the claims of creditors conveys it away in an attempt to free it from that liability. It is not a fraud in contemplation of law to deprive one of that to which he has no right. It was said in *Killinger v. Reidenhauer*, 6 S. & R. 531, 535: "A man can never be said to commit a fraud on the contingent rights of others, where it depends on his own act whether they shall ever exist." The fact that Flint and his wife admittedly executed the deed of trust for the very purpose of preventing him from becoming the owner by survivorship is, from a legal standpoint, immaterial, because, where a right exists, the law is not

concerned with the motive which prompts its exercise: *Beirne v. Continental-Equitable Title & Trust Co.*, 307 Pa. 570, 577.

While holding, therefore, as we do, that the conveyance by Flint and his wife was valid and cannot be set aside as being in fraud of plaintiff or other creditors of Flint, it is to be borne in mind that the *legality* of the deed does not determine its *effect*. Whatever title or estate resulted from it to the grantors passed to Flint by survivorship and can be subjected to the claims of his creditors. Plaintiff argues that the trust is a passive one and executed by the Statute of Uses, while defendant contends that it must be construed as active because of the spendthrift trust provisions and the necessity of preserving the remainder interests.[2] Plaintiff urges that by the reservation of the power of revocation and amendment Flint's interest now amounts to complete ownership and the grant to his children is merely testamentary in character, while defendant contends that that grant is vested even though subject to the possible exercise of the reserved power, and that unless and until such power is exercised the grant is not affected.[3] But we are not called upon at present to determine these questions, which cannot be raised in a proceeding under the Fraudulent Conveyance Act, especially as the case stated expressly limits the scope of the inquiry to the question whether the conveyance was in fraud of cred-

---

[2] See *Rife v. Geyer*, 59 Pa. 393; *Little v. Wilcox*, 119 Pa. 439, 448; *Thompson v. Carmichael*, 122 Pa. 478; *Forney's Estate*, 161 Pa. 209; *Mooney's Estate*, 205 Pa. 418; *Vaughan's Estate*, 230 Pa. 554; *Rehr v. Fidelity-Philadelphia Trust Co.*, 310 Pa. 301, 304; *Owens v. Naughton*, 23 Pa. Superior Ct. 639.

[3] See *Dickerson's Appeal*, 115 Pa. 198; *Lines v. Lines*, 142 Pa. 149; *Wilson v. Anderson*, 186 Pa. 531, 536-540 (no power of revocation reserved); *Windolph v. Girard Trust Co.*, 245 Pa. 349, 367-369; *Dolan's Estate*, 279 Pa. 582, 589, 590; *Beirne v. Continental-Equitable Title & Trust Co.*, 307 Pa. 570, 576; Restatement, Trusts, section 57(1); see also section 330(o).

itors. The title which Flint now has in the property will become the proper subject of inquiry if and when plaintiff or some other purchaser acquires it at sheriff's sale on execution.

The decree is reversed and the bill dismissed at cost of appellee.