## The Bank of Erie v. LaJohn

*Bernard Quinn* and *James B. Dwyer, Jr.*, for plaintiff.

*J. S. Jiuliante, Jr.*, and *Charles A. Mertens*, for defendants.

LAUB J., February 16, 1962.—Plaintiff entered into judgment, by confession, two judgment notes signed by defendants who are husband and wife. Defendant, James LaJohn, Jr., has petitioned to open the judgments, thereby presenting us with a novel problem which we are called upon to dissolve at this time.

The facts are these: James LaJohn, Jr., and Judith M. LaJohn, his wife, executed two judgment notes in favor of plaintiff. Each note was in the identical amount of $3,000, but they were executed at different times. Approximately five-and-a-half months after the creation of the second note, James LaJohn, Jr., individually and doing business as J. & J. Tire Company, was adjudicated a bankrupt. Judith M. LaJohn was not involved in her husband's bankruptcy proceedings

and has not been adjudicated a bankrupt at any time. On January 26, 1961, eight days after James' adjudication, plaintiff entered the notes into judgment against both defendants but did not attempt execution thereon until October 27, 1961, when a writ of execution was issued directing the sale of real estate held by defendants as tenants by the entireties. James received his final discharge in bankruptcy November 7, 1961, and six days later petitioned to open the judgments on the ground that his bankruptcy discharge released him from liability and that the notes do not represent a valid indebtedness against him. A rule to show cause was entered and proceedings were stayed meanwhile.

Neither the petition nor the answer filed thereto supplies information whether the debts in controversy were duly scheduled by the bankrupt in time for proof and allowance, nor is there any allegation concerning notice or actual knowledge of the bankruptcy proceedings by plaintiff as required by section 17a(3) of the Bankruptcy Act of July 1, 1898, 11 U.S.C.A. §35. It is, therefore, probable that the petition is insufficient in any event but, in view of the importance of the matter to those who lend money to husbands and wives on the strength of the marriage relationship and in view of the importance of the matter to husbands and wives who own entireties property and need to borrow on its credit, we have concluded to treat the petition as though it contains all necessary averments.

The difficulty may be succinctly stated as follows: Where a husband and wife enter into the execution of a judgment note as a common obligation and thereafter the husband becomes bankrupt and is discharged in bankruptcy proceedings but the wife has not become bankrupt and is not so discharged, may the obligee of the judgment note enter it in judgment against both obligors and thereafter successfully maintain the

judgment's integrity? The answer depends, we think, upon the nature of the obligation and whether the bankruptcy court had jurisdiction to discharge it.

It is important at the outset to examine the theory and jurisdiction of bankruptcy proceedings to determine whether, apart from James' individual liability, this was a debt which falls within their compass. Black's Law Dictionary defines bankruptcy, inter alia, as "The proceedings taken under the bankrupt law, against a person (or firm or company) to have him adjudged a bankrupt, and to have his estate administered for the benefit of the creditors, and divided among them." This means that the bankrupt can be absolved from the liability of his debts by throwing into the common pot for distribution to his creditors all of his property which is liable therefor. It is obvious that in this Commonwealth, where entireties estates are fully recognized, James LaJohn, Jr., could not subject to bankruptcy administration any entireties property held by himself and his wife. The Bankruptcy Act itself recognizes that, in those States where a tenancy by the entireties is permissible, the trustee cannot, except in certain instances, reach out and take any property held by the entireties for, in section 70(a) 11 U.S.C.A. §110(a) there is this provision:

"All property . . . in which the bankrupt has at the date of bankruptcy an estate or interest by the entirety and which within six months after bankruptcy becomes transferable in whole or in part solely by the bankrupt shall, to the extent it becomes so transferable, vest in the trustee . . . as of the date of bankruptcy."

It is obvious that the bankrupt could not have transferred in whole or in part any interest which he had in the entireties property, either within six months after bankruptcy as the statute provides, or at any other time while the entireties estate remained intact. The incidents of an entireties estate in Pennsylvania

were adequately described in C. I. T. Corporation v. Flint, 333 Pa. 350, 5 A. 2d 126 (reiterated in Lunnen v. Hunter, 348 Pa. 402, 404-05, 35 A. 2d 292), where it was said:

". . . Tenancy by entireties is a venerable institution of the common law; it rests upon instincts which form the very warp and woof of our domestic and social fabric. In such a tenancy each spouse is seized per tout et non per my. There is but one legal estate, which, by a long course of judicial decisions, has been buttressed against inroads attempted either by the parties themselves or by their individual creditors."

In such an estate, the parties each own the whole or the entirety and not a share, moiety or divisible part: Gallagher Estate, 352 Pa. 476, 478, 43 A. 2d 132. They are not joint tenants or tenants in common. As a consequence of owning the entirety, neither party can dispose of any part without the consent of the other, but the whole must remain to the other: Meyer's Estate (No. 1), 232 Pa. 89, 94, 81 Atl. 145. Thus, the trustee had no vested right in any entireties property held by James LaJohn, Jr. "A trustee in bankruptcy of the husband is not entitled, during the life of the wife, to any part of the principal or income of the [entireties] estate . . . the husband and wife can convey the property free from judgments and the effect of bankruptcy proceedings against the husband and also from any contingent interest or ownership by the trustee in bankruptcy in the event of the husband surviving the wife . . .": C. I. T. Corporation v. Flint, supra.

It is clear, therefore, that the bankruptcy court could not force defendants' entireties property into the bankrupt's estate for distribution among the husband's creditors, but this is only a halfway station in the road to a solution of the entire problem. Conceding

that the trustee could not take possession of the entireties property of defendants, what can be said of the debts themselves? Were the debts discharged notwithstanding the entireties property could not be made to apply to them? The answer to these inquiries must be found in the nature of the debts which defendants created.

It may be stated at once that, in view of the statutes which emancipate married women, there can be no question but that the debts were joint and several. In Pennsylvania, a married woman may sue and be sued with the same effect and results and consequences as an unmarried person (48 PS §111) and she may own, control, use and convey property of any kind in the same fashion as a married man (48 PS §32.1). It seems apparent that, because of these acts, execution may be levied against a married woman's individual property for her obligations to the same extent as an action may be had against the property of any other individual and that, therefore, a married woman may legally enter into a joint and several obligation with her husband or anyone else.

But, is there a third dimension to an obligation entered into by a husband and wife; one which creates an indebtedness which is joint, joint and several and is, at the same time, an entireties obligation which is separate and distinct from the other two? In Pennsylvania, the law recognizes the unity of man and wife as a separate and distinct legal entity. Otherwise, entireties estates would have no firm foundation and would constitute nothing more than a refuge to which the spouses might run to escape a debt contracted by the entity itself. Such a result would be not only unconscionable but would do violence to all our concepts of the common-law status of husband and wife. While an entireties estate may afford a safety island against

the enforcement of collection of the individual debts of a discharged bankrupt spouse, it provides no sanctuary against the enforcement of a debt contracted by the marriage entity as a unit. It is our view that the same qualities and incidents of a tenancy by the entireties inhere also to an obligation entered into by a husband and wife as a common undertaking.

We have been unable to discover a foursquare precedent in this Commonwealth which coincides with the views expressed above, but there are at least two respectable foreign cases which are consonant with such views. In both First Nat. Bank of Goodland v. Pothuisje, 217 Ind. 1, 25 N. E. 2d 436, and Edwards & Chamberlin Hardware Co. v. Pethick, 250 Mich. 315, 230 N. W. 186 (followed in McPherson v. Gregory, 271 Mich. 580, 260 N. W. 767), the holdings were in accord with our conclusions in this case.* Unfortunately, both cases refer to local statutes which permit execution on entireties property for joint debts created by husband and wife. We have been unable to discover a similar statute in Pennsylvania but no such statute is needed, for such right is a common-law right inherent in an entireties estate. The reason why entireties property cannot be sold in satisfaction of an individual judgment against one of the tenants alone is obvious from the nature of the estate. During coverture, neither tenant owns a severable interest. A husband and wife can convey the property jointly, can mortgage it jointly and can lease it jointly. Why then can they not jointly impress it with liability for a common undertaking? The right to levy on entireties prop-

---

* The Pethick case turned largely on the court's view of the proceedings as being quasi in rem to subject entireties property to the payment of a particular charge against it and not as an action to secure a personal judgment against an individual obligor. The court, however, recognized the peculiar qualities of an obligation assumed by husband and wife with respect to entireties property.

erty for an entireties obligation is so far above contravention that Judge Montgomery, in Swope v. Turner, 193 Pa. Superior Ct., 217, 220, 163 A. 2d 714, did not deem it necessary to cite authority when, speaking for the court, he said:

". . . That she [wife co-signer of a note] was a material party in this transaction is borne out by the fact that she joined with her husband in signing another judgment note to the bank as consideration for the assignment of the judgment under consideration. . . . By this action she obligated herself and subjected her individual property, as well as the property she held as tenant by the entirety with her husband, for the pay- of the judgment. . . ."

It is apparent from this that, if our research is not faulty and there is no Pennsylvania statute in point, the law of this jurisdiction, nevertheless, still coincides with the statutory law of both Michigan and Indiana.

Fairness dictates that some mention be made of Wharton v. Citizens' Bank, 223 Mo. App. 236, 15 S. W. 2d 860, which, in many respects, is in agreement with what has been said here but which reaches a contrary result: In that case, the court fully considered the nature and character of tenancies by the entireties and concluded that such an estate does not become an asset to be adjudicated upon application for bankruptcy by one of the spouses. It also concluded that such an estate is subject to the levy of execution for the joint debt of the husband and wife. It held, however, that man and wife do not constitute an artificial person, and, therefore, their joint obligation in that case was merely a joint and several obligation. We conclude, as did the court in the Pothuisje case, that the reasoning of the Missouri court was faulty. It is true that a man and wife do not constitute an artificial person as in the case of a corporation, but the common law recognizes that in certain of the incidents of marriage they do

constitute a unit which must be treated as such. The estate known as tenancy by the entireties is not a creature of the law designed solely to protect the parties to a marriage; it is also designed to facilitate and preserve the family relationship just as the same law prohibits a wife from suing her husband, a spouse from revealing confidential communications or offering testimony against the other.

The Missouri court admitted that the bank in the Wharton case extended credit to what it called "the entity" and that upon maturity of the debt the bank had a right to proceed against the husband and wife jointly, and thus reduce the debt to a judgment that would be a lien on the real estate owned by them as tenants by the entireties. We think this statement by the court refutes the prior one that husband and wife do not constitute an artificial person, for what is a person in law but an entity, a thing in being? Black's Law dictionary cites authority for the conclusion that the theory of entireties estates is based upon the common-law doctrine that husband and wife are one, and Blackstone (book 2, chap. 12), says this:

"And therefore, if an estate in fee be given to a man and his wife, they are neither properly joint-tenants, nor tenants in common: for husband and wife being considered as one *person* in law, they cannot take the estate by moieties, but both are seized of the entirety, per tout, et non per my . . ." (Italics supplied.)

It was, therefore, this *person* to whom the bank extended credit in both the Missouri case and the case at bar; the debt was at once that of this unit as well as of its individual components. It is logical to conclude, therefore, that the obligation was joint, joint and several and entire.

It is our opinion that while the discharge of the bankruptcy court relieved James of the obligation of his

provable debts, it did not touch the entire obligation of James and his wife. The discharge only affected the several liabilities aspect of the debt but afforded no relief against the distinct dimension of liability created by the husband and wife as a common-law unit. Liability under the unit obligation, as opposed to the individual liabilities of the parties, was not the subject of protection by bankruptcy any more than the bankruptcy court had a right to subject entireties property to the satisfaction of James' debts. As indicated in the Pothuisje case, the immunities which accrue to a debtor by reason of a bankruptcy discharge must be measured by the limitations on the power of the bankruptcy court to administer his property and discharge his liabilities. As to property it cannot reach and debts it cannot adjudicate, the judgments and decrees of a bankruptcy court are inoperative. In consequence, the unit obligation was unaffected by the bankruptcy and the parties to the judgment notes, as a separate entity, were in the precise position they would have been in had bankruptcy not been invoked.

It was argued by petitioner in the case before us that if the judgments are permitted to remain in their present form, plaintiff could execute against after-acquired property of James and thus deprive him of the benefit of his bankruptcy discharge. This, of course, does not follow, for while the entireties debt was unaffected by the bankruptcy, James' individual liability was. As a consequence of his discharge in bankruptcy, plaintiff could not legally issue execution against his after-acquired property. It is a general rule that courts can control executions issued from their own records, and can, for sufficient reasons, restrict a levy or set it aside: Cake v. Cake, 192 Pa. 550, 552, 43 Atl. 971. For this reason, if plaintiff ever attempts to levy upon any after-acquired property of James individually, this court can promptly interpose and afford relief. By the

same token, this court can adjust as a credit against the entire judgments, any pro rata payment made to plaintiff in the bankruptcy if its claim has been honored there: Swope v. Turner, supra, p. 221.

### Order of Court

And now, February 16, 1962, the rule entered November 13, 1961, to show cause why the judgments should not be opened and defendant, James LaJohn, Jr., be let into a defense is discharged without prejudice to the right of the said James LaJohn, Jr., to apply for relief in the event of an improper levy on his individual property.