**Irvin RAPOPORT, Appellant,**

v.

**Rose RAPOPORT, also known as Joan Sirott, Appellee.**

**No. 23415.**

United States Court of Appeals
Ninth Circuit.

Aug. 20, 1969.

**42**

Sheldon W. Farber, Norristown, Pa. (argued), and Robert Danforth, San Francisco, Cal., for appellant.

Louis M. Cohen (argued), of Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., Gordon W. Rice, Reno, Nev., Steinhart, Goldberg, Feigenbaum & Ladar, San Francisco, Cal., for appellee.

Before KOELSCH and HUFSTEDLER, Circuit Judges, and HAUK,* District Judge.

HUFSTEDLER, Circuit Judge:

Irvin Rapoport ("Irvin") sued Rose Rapoport ("Rose") in the Federal District Court in Nevada seeking a declaration that Rose's Nevada divorce decree against him was void for want of jurisdiction of the subject matter and further seeking a declaration that an injunction issued by a Pennsylvania court restraining Rose from proceeding with her Nevada action was entitled to full faith and credit. The District Court concluded that it had jurisdiction and decided the case on the merits against Irvin. He appeals.

Federal jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332

(a) (1). Because we hold that federal jurisdiction was lacking due to the absence of the requisite amount in controversy, we do not reach the merits of the litigation.

At all material times Irvin has been a resident of Pennsylvania, the state of the matrimonial domicile. In December 1963 Rose filed a divorce suit against Irvin. He answered, and the suit has been pending ever since. Rose left Pennsylvania for Nevada in the spring of 1964. In May 1964 she commenced a divorce suit in Nevada. Irvin was not personally served in Nevada, and he never appeared in the Nevada courts. When he was constructively served with the Nevada suit, he filed suit in Pennsylvania to obtain an injunction restraining her from prosecuting any divorce proceeding except that pending in Pennsylvania. He served Rose by serving her attorney of record in her Pennsylvania divorce suit and by sending her in Nevada a copy of the complaint. Rose defaulted. Without any findings about Rose's domicile, the Pennsylvania court issued an injunction in accordance with Irvin's prayer, and copies of the decree were served in a manner similar to that of the initial summons and complaint. Rose thereafter completed the Nevada proceeding and obtained a divorce decree. She later remarried. She has lived in Nevada continuously since she moved there in 1964.

During their marriage Rose and Irvin acquired a parcel of Pennsylvania real property to which title was taken as tenants by the entirety. Under Pennsylvania law, a divorce decree automatically converts a tenancy by the entirety into a tenancy in common.[1] Irvin averred that the combined interests of the parties in that property were worth $25,000.

Irvin claimed that the Nevada decree was void because Rose had not been a

---

* Hon. A. Andrew Hauk, United States District Court Judge, Los Angeles, California, sitting by designation.

1. 68 Pa.Stat.Ann. § 501; Collins v. Wilkinson, (1950) 366 Pa. 108, 76 A.2d 649.

Under the same statute, either former spouse may thereafter seek partition of the common property in a suit in equity filed against the other.

bona fide domiciliary of Nevada for enough time to confer on Nevada jurisdiction of the marital res and that Nevada had failed to accord full faith and credit to the Pennsylvania decree enjoining Rose from prosecuting the Nevada suit.

■ A suit attacking a state court judgment as void for want of subject matter jurisdiction lies within the federal province, if the other requisites for federal jurisdiction are present. (Simon v. Southern Ry. Co. (1915) 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492; Daniels v. Thomas (10th Cir. 1955) 225 F.2d 795, *cert. denied,* (1956) 350 U.S. 932, 76 S.Ct. 303, 100 L.Ed. 815.) Jurisdiction thus grounded is not lost simply because the judgment attacked is a divorce decree. (Southard v. Southard (2d Cir. 1962) 305 F.2d 730.)

Diversity of citizenship was present and the subject matter of the suit was within federal ken. There remains the inquiry into the pecuniary component of diversity jurisdiction, which this court noticed on its own motion (*e.g.,* McNutt v. General Motors Acceptance Corp. (1936) 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135) and as to which the parties have filed briefs in response to our order. At this juncture the parties have joined forces to convince us that there is an amount in controversy satisfying the requirements of 28 U.S.C. § 1332(a) (1).

■■ The first contention is that a declaration of marital status is worth more than $10,000 to each of the parties, because an adjudication of status potentially affects the support obligations of Irvin and of Rose's second mate. The argument fails for the reason crisply stated in 1 Moore's Federal Practice (1964) ¶ 0.92[5], p. 842: "Where a matter in dispute is of such a nature as to be incapable of being reduced to a pecuniary standard of value, jurisdiction cannot be predicated on any statute containing an amount in controversy requirement." A declaration of marital status is patently beyond pecuniary measure. (*See* De La Rama v. De La Rama (1906) 201 U.S. 303, 307, 26 S.Ct. 485, 50 L.Ed. 765; cf. Barry v. Mercein (1847) 46 U.S. (5 How.) 103, 120, 12 L.Ed. 70.)

The second contention is that the interests of the parties in the Pennsylvania real property will be directly affected by the declaration in a pecuniary amount more than $10,000. The contention fails because (1) the declaration affects the parties' interests collaterally and not directly, and (2) the interest in controversy was not shown to be worth $10,000 or more.

■ It is well settled that the amount in controversy requirement cannot be met by taking into account any collateral effect which may follow adjudication, whether by way of estoppel of the parties or otherwise. (1 Moore's Federal Practice, *supra,* ¶ 0.91[2], pp. 828–31.) The parties argue that the interests in the realty are directly affected by an adjudication of status, because, under Pennsylvania law, a decree of divorce automatically changes the nature of their tenancy. A decree of divorce may change the nature of the parties' tenancy, but nothing in the Pennsylvania law suggests that a federal declaration of marital status has any such effect. Indeed, it is hard to see how it could. A federal decree declaring that the Nevada decree is valid could not affect the title at all. The Nevada decree accomplished the change, and not the federal decree. A federal decree declaring that the Nevada decree was void has no necessary effect on title. The Pennsylvania law obviously gives effect only to valid divorce decrees. If a divorce decree is void, it is a complete nullity from its outset. In theory nothing happened to the title at the issuance of the void decree, and a federal court's saying so does no more than state a condition which existed all along.

The supervening reason why the value of the interests in the Pennsylvania property cannot be used to fulfill the monetary requirement is that that property and the respective interests of the parties in it was not directly the matter

in controversy. Even if the federal court could have adjudicated the interests of the parties in the real property, a dubious assumption, it was not asked to do so in this case. The only matter directly in controversy was the validity of Rose's divorce. The property was, at the most, indirectly affected.

■ Even if the property had been directly in dispute, there was a complete failure by Irvin to plead or to prove that the value of his affected interest was at least $10,000. Jurisdiction was challenged in the District Court. It was Irvin's burden to prove the amount in controversy. (McNutt v. General Motors Acceptance Corp. (1936) 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135.) His affidavits are completely inadequate to carry his burden. At most, the facts stated are that the whole of Rose's and his interests are worth $25,000 and his interest as a tenant in common, if such he be, is worth at least half that sum. Were the property interests in controversy, the amount in controversy was the value of the interest which Irvin stood to gain or lose by the litigation. (1 Moore's Federal Practice, *supra*, ¶ 0.91[1], pp. 826–27.) He could not lose the value of his interest as a tenant in common, because he still owns that interest if the divorce was valid. All he could win or lose was the difference in value between his interest as a tenant in common and his interest as a husband-tenant by the entirety. (*Cf.* Carne v. Russ (1894) 152 U.S. 250, 14 S.Ct. 578, 38 L.Ed. 428; 1 Moore's Federal Practice, *supra*, ¶ 0.95, pp. 864–65.) There are no facts in his affidavits from which the conclusion could follow that his interest as a tenant in common was worth at least $10,000 less than his interest as a tenant by the entirety.

In view of our disposition of the controlling issues, the remaining contentions of the parties do not require discussion.

Each party shall bear his own costs on appeal.

The decree is reversed and the cause is remanded to the District Court with directions to dismiss the suit for want of jurisdiction.

KOELSCH, Circuit Judge (dissenting).

I dissent.

As a tenant by the entireties in fee in the Rapoport real property, Irvin's interest is of the whole worth at least $25,000 [Walker's Estate, 340 Pa. 13, 16 A.2d 28, 132 A.L.R. 628 (1940); C.I.T. Corp. v. Flint, 333 Pa. 350, 5 A.2d 126, 121 A.L.R. 1022 (1939)]; as a tenant in common his interest is but half with a correspondingly lesser value. Manifestly the difference adequately meets the monetary requirement of the diversity statute.

"And I submit that the suit directly involves the property, for the true nature of the parties' present interests necessarily hinges upon the outcome. The appeal should be entertained.