In re James L. BARBER, Debtor.

James L. Barber, Movant,

v.

K–B Building Co., Respondent.

No. 01–22820BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 17, 2006.

David J. Novak, James R. Walsh, Johnstown, PA, for Movant.

Vincent J. Barbera, Somerset, PA, for Respondent.

*MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor James L. Barber has brought a motion for an order prohibiting K–B Building Company from pursuing a lawsuit it brought against debtor and his wife that is now pending in the Court of Common Pleas of Cambria County, Pennsylvania. Debtor asks that K–B be held in contempt for violating the order discharging debtor and/or § 522(c) of the Bankruptcy Code.

The motion will be granted in part and denied in part for reasons set forth below.

—FACTS—

K–B brought a lawsuit in the Court of Common Pleas of Cambria County, Pennsylvania, in May of 1999 against debtor and a corporation of which he was a principal pursuant to Pennsylvania's Fraudulent Transfer Act (12 Pa.C.S.A. § 5101 *et seq.*). It alleged, among other things, that the corporation had made numerous transfers to debtor with actual intent to defraud K–B.

Debtor filed a voluntary chapter 7 petition on March 22, 2001, thereby automatically staying the state court action. The schedules accompanying the petition listed assets with a total declared value of $175,443.97 and liabilities totaling $1,439,228.26.

Included among the assets listed was a tract of real property on which the residence of debtor and his wife was situated. The property was subject, among other things, to a first priority mortgage in the amount of $142,500 in favor of Portage National Bank which debtor had granted it in June of 2000. Although debtor was married at the time, he was the sole owner of record. He had purchased the property prior to their marriage and had not conveyed it to himself and his wife as tenants by the entirety prior to his bankruptcy filing.

Debtor claimed an exemption in the residence in accordance with § 522(d)(1) of the Bankruptcy Code. The exemption was allowed as a matter of law when no timely objection thereto was made. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

K–B was granted relief from the automatic stay in June of 2001 to pursue the above fraudulent transfer action that it had brought in state court. In addition, K–B brought an adversary action against debtor in this court the following month seeking a determination that the debt owed to it by debtor as a result of the allegedly fraudulent transfers was excepted from discharge.

Debtor was granted a discharge on July 27, 2001. The order was vacated shortly thereafter on August 6, 2001. A review of the record indicates that no subsequent discharge order was ever entered in the case.

On August 6, 2001, after conducting a trial, the state court entered a judgment in the fraudulent transfer action in favor of K–B and against debtor in the amount of $74,760.00. The amount of the judgment subsequently was reduced to $55,010.00 after debtor appealed the judgment.

Debtor brought a motion pursuant to § 522(f) of the Bankruptcy Code in May of 2002 to avoid the judicial lien in favor K–B on the theory that it impaired the exemption he had taken in the residence. A default order granting the motion issued on June 4, 2002, when K–B did not respond to the motion. K–B did not appeal the order.

On June 24, 2002, debtor conveyed the residence to himself and his wife as tenants by the entirety. The deed was duly recorded that same day.

Also on June 24, 2002, debtor and his wife executed and delivered a mortgage note in favor of 1st Summit Bank in the amount of $148,000. They also granted it a mortgage against their residence. The mortgage was duly recorded that same day.

On August 2, 2002, after conducting a trial of the above adversary action, we determined that the debt owed to K–B by debtor was excepted from discharge and entered judgment accordingly. *K–B*

*Building Co. v. Barber (In re Barber)*, 281 B.R. 617 (Bankr.W.D.Pa.2002). Debtor did not appeal the judgment.

A final decree was issued and debtor's bankruptcy case was closed on October 4, 2002.

Approximately seven weeks later, on November 24, 2002, K–B brought a fraudulent transfer action (12 Pa.C.S.A. § 5101 *et seq.*) in the Court of Common Pleas of Cambria County, Pennsylvania, against debtor and his wife. It is this lawsuit that is the subject of the motion presently under consideration.

According to the complaint, since the year 2000 debtor had deposited his earnings into a checking account held jointly with his wife, first at Portage National Bank and later on at 1st Summit Bank. The funds deposited in the joint accounts, K–B continued, came entirely from debtor's earnings. Instead of depositing her earnings in the joint accounts, debtor's wife deposited them in another account in her name only. The funds in the joint account at Portage National Bank, K–B maintained, were used to pay down the mortgage debtor had granted it in June of the year 2000. The funds in the joint account at 1st Summit Bank were used to pay down the mortgage debtor and his wife had granted it in June of 2002.

K–B asserted that debtor's earnings were deposited in the joint accounts for the purpose of defrauding his creditors. It requested a judgment in the amount of all mortgage payments made from the joint accounts and a lien against the real property owned by debtor and his wife as tenants by the entirety.

On August 15, 2005, debtor brought a motion to reopen his bankruptcy case for the purpose of bringing a motion to hold K–B in contempt for initiating the just-described fraudulent transfer action against debtor and his wife in state court. The motion to reopen was granted on October 4, 2005, when K–B did not oppose it.

Shortly thereafter, on October 17, 2005, debtor brought the motion for contempt which is under consideration at this time. According to debtor, the action brought by K–B against him and his wife violated the discharge order and § 522(c) of the Bankruptcy Code.

Oral argument on the motion was heard on December 8, 2005. The parties have briefed the matter and it is now ready for decision.

—DISCUSSION—

A bankruptcy estate is created at the commencement of a bankruptcy case. 11 U.S.C. § 541. It generally is comprised of all legal and equitable interests of the debtor in property at that time. 11 U.S.C. § 541(a)(1). Any property the debtor intends to exempt in accordance with the various provisions set forth as § 522 of the Bankruptcy Code is included. *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. at 1835. If a claimed exemption is allowed, the property is withdrawn from the bankruptcy estate and is not available for liquidation and distribution to creditors having allowed claims. *Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991).

In addition to seeking a monetary judgment against debtor and his wife in the fraudulent transfer action pending in state court, K–B seeks to have a lien imposed on the property which debtor previously had exempted.

Debtor asserts in his motion for contempt that K–B's quest for such a lien is prohibited by § 522(c) of the Bankruptcy Code. K–B, he maintains, consequently should be "estopped" from proceeding fur-

ther with the lawsuit pending in state court.[1]

■ Section 522(c) provides in pertinent part as follows:

> ... [P]roperty exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case ....

11 U.S.C. § 522(c). To paraphrase this provision, property that is exempted is "immunized" by § 522(c) against liability for any pre-petition debt owed by debtor. *Owen,* 500 U.S. at 308, 111 S.Ct. at 1835.

K–B has objected to debtor's motion for contempt on two grounds.

It first maintains that the property on which it seeks to have a lien imposed—*i.e.,* the residence of debtor and his wife—no longer qualifies as "property exempted" for purposes of § 522(c) because it no longer is owned solely by debtor, as it was when it was exempted. Subsequent to filing his chapter 7 petition and while the bankruptcy case was in progress, debtor conveyed the property to himself and his wife as tenants by the entirety. Absurdity would result, K–B insists, if the property were always exempt from liability regardless of who subsequently owns it.

K–B further maintains that in requesting a lien on the property, it is not seeking to make it liable for any pre-petition debt owed to it by debtor. The liability at issue in the lawsuit presently pending in state court, K–B continues, arose post-petition, as the fraudulent conduct about which it has complained occurred after debtor received a discharge and after the ownership of the property changed hands.

We will address these contentions *seriatim.*

### Is The Residence Still "Property Exempted" For Purposes Of § 522(c)?

■ We are not called upon to decide whether the cause of action asserted in the lawsuit presently pending in state court has any merit. Such a determination is reserved for the state court. We are, however, satisfied that if K–B prevails and is granted the lien it seeks, said lien would attach to "property exempted" for purposes of § 522(c).

■ Husband and wife are treated under the law for most purposes as separate and distinct individuals. Each is *sui juris* and is entitled to own property apart from the other. When they own property jointly, however, the presumption is that they own it as tenants by the entirety. Even though they are separate and distinct individuals, their interests in the property are indivisible. *Sterrett v. Sterrett,* 401 Pa. 583, 585, 166 A.2d 1, 2 (1960).

■ A tenancy by the entirety is a type of joint tenancy which is modified by the common-law fiction that husband and wife are but a single person. *Frederick v. Southwick,* 165 Pa.Super. 78, 83, 67 A.2d 802, 805 (1949). Husband and wife are treated as though they were a corporate entity. *C.I.T Corp. v. Flint,* 333 Pa. 350, 354, 5 A.2d 126, 129 (1939). Each spouse is seised *per tout et non my*—i.e., of the whole or entirety as opposed to a share, moiety, or divisible part. *Estate of Bullotta,* 798 A.2d 771, 774 (Pa.Super.2002), *aff'd,* 575 Pa. 587, 838 A.2d 594 (2003). This type of ownership is reserved exclusively for married couples. *First Federal Sav-*

---

1. Debtor also asserts in his motion that K–B's pursuit of the lawsuit violates the discharge he received. We will not address this contention because the record indicates that debtor did not receive a discharge. As was noted previously, the discharge order initially issued was vacated shortly thereafter. A subsequent discharge order was not issued.

*ings & Loan Association of Greene County v. Porter,* 408 Pa. 236, 242, 183 A.2d 318, 322 (1962).

In addition to right of survivorship, a tenancy by the entirety is characterized by the unities of title, time and possession. *Estate of Maljovec,* 412 Pa.Super. 80, 84, 602 A.2d 1317, 1319 (1991). Until the marriage ends, whether by divorce or death of one of the spouses, neither spouse may compel partition of entireties property or sever it by unilateral conveyance nor may affect in any way the survivorship interest of the other spouse. *Napotnik v. Equibank,* 679 F.2d 316, 319 (3d Cir.1982). A judgment creditor may execute on entireties property only when both spouses are judgment debtors. *Klebach v. Mellon Bank,* 388 Pa.Super. 203, 208, 565 A.2d 448, 450 (1989). Entireties property is immune from process, execution, or forced sale by a judgment creditor of only one of spouses. *Id.* Enforcement of process in such an instance would permit the taking of the interest of one spouse to satisfy a liability of the other. *Beihl v. Martin,* 236 Pa. 519, 523, 84 A. 953, 954 (1912).

In an estate by the entirety, each spouse has a contingent expectancy of individual ownership which arises out of the right of survivorship and "fastens upon" the property only if the expectancy is actualized. *C.I.T Corp.,* 333 Pa. at 355, 5 A.2d at 128. A creditor's lien on the expectant interest of one spouse becomes enforceable only if and when the expectancy "ripens into a realized fact". At that point execution by a judgment creditor is not upon a mere expectancy but instead on an actual estate. *Beihl,* 236 Pa. at 528, 84 A. at 957.

The above statement of the law makes it clear that debtor no longer owned the property after he conveyed it to himself and his wife as tenants by the entirety. It instead was owned by the marital unit. However, it does not follow from this, as K–B asserts, that the property no longer qualifies as "property exempted" for purposes of § 522(c).

The starting point when construing a statute is the text itself. *Connecticut National Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). We must give the words of the statute their "ordinary or natural meaning". *Smith v. U.S.,* 508 U.S. 223, 229, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993). When the language of a statute is plain, the sole function of a court is to enforce it according to its terms, unless the result is absurd. *Hartford Underwriters Insurance Co. v. Union Planters Bank,* 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000).

As we read § 522(c), the phrase "property exempted" refers to the *property* in which a debtor has an interest and not, as K–B would have it, to the *interest* a debtor has in the property. While debtor's individual interest in the residence has been extinguished and replaced by the interest of the marital entity comprised of debtor and his wife, the property exempted remains the same—i.e., the residence in which debtor and his wife reside.

*Would The "Property Exempted" Become Liable For A Pre–Petition Debt Owed By Debtor If A Lien Were Imposed On It?*

Having determined that any lien K–B might acquire in the event it prevails in the fraudulent transfer action now pending in state court would for purposes of § 522(c) attach to the "property exempted" by debtor, it remains to be determined whether the property would in that instance be liable for a pre-petition debt owed to K–B by debtor. If it is so liable, K–B's action would violate § 522(c).

In its complaint in the pending fraudulent transfer action, K–B alleges that *since the year 2000* debtor had deposited his earnings into a checking account held jointly with his wife, first at Portage National Bank and later on at 1st Summit Bank. The funds in the Portage National Bank account allegedly were used to pay down the mortgage debtor had granted it in June of 2000. The funds in the 1st Summit Bank account allegedly were used to pay down the mortgage debtor and his wife had granted it in June of 2002 immediately after debtor had conveyed the property to himself and his wife as tenants by the entirety.

K–B maintains that the debt resulting if it prevails in the pending fraudulent transfer action arose post-petition, not pre-petition. This is not entirely correct. Part of it would be pre-petition while the rest would be post-petition.

 The term "debt" is defined in the Bankruptcy Code as "liability on a claim". 11 U.S.C. § 101(12). "Claim" in turn means a "right to payment", whether or not such right is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, secured or unsecured. 11 U.S.C. § 101(15). A debt, in other words, is liability on a right to payment.

 The terms "debt" and "claim" are co-extensive. *In re First Jersey Securities,* 180 F.3d 504, 510 (3d Cir.1999). When a creditor has a claim against the debtor, the debtor correspondingly owes a debt to the creditor. *Id.* They are "but two windows on the same room". *Sigmon v. Royal Cake Company, Inc. (In re Cybermech, Inc.),* 13 F.3d 818, 822 (4th Cir. 1994).

 The Bankruptcy Code does not specify when a "right to payment" arises

for bankruptcy purposes. It is the law in this Circuit that a claim, and hence a debt, arises for bankruptcy purposes when the cause of action underlying it accrues under applicable state law. *Avellino & Bienes v. M. Frenville Co., Inc. (Matter of M. Frenville Co., Inc.),* 744 F.2d 332, 335–36 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). Although *Frenville* has been roundly criticized by other courts, it remains the law in this circuit and must be followed in this matter. *Jones v. Chemetron Corp.,* 212 F.3d 199, 205–06 (3d Cir.2000).

 Assuming for the sake of argument that the allegations in the complaint are true, we conclude that liability for any payments made to Portage National Bank that were made prior to March 22, 2001, the date on which debtor's bankruptcy case commenced, arose pre-petition. Pursuant to § 522(c) of the Bankruptcy Code, the property exempted by debtor cannot be liable for that debt.

We conclude otherwise with respect to any payments to Portage National Bank and to 1st Summit Bank that were made *after* commencement of this bankruptcy case. Any liability for such payments would have arisen post-petition and would not be prohibited by § 522(c). K–B in that instance would not be "estopped" from acquiring a lien against the property exempted by debtor even though it is now entireties property.