In re Roger E. HOPE, Debtor.

Bankruptcy No. 86–00851G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 31, 1987.

---

Christopher G. Kuhn, Pincus, Verlin, Hahn & Reich, Philadelphia, Pa., for debtor/movant, Roger E. Hope.

Kevin W. Walsh, Adelman Lavine Krasny Gold and Levin, Philadelphia, Pa., for Union Nat. Bank and Trust Co. of Souderton.

## MEMORANDUM OPINION

### BRUCE FOX, Bankruptcy Judge:

Before me is the debtor's motion to reopen a chapter 7 bankruptcy case for the purpose of initiating proceedings to avoid a judicial lien. The motion is opposed by Union National Bank and Trust Company of Souderton ("UNB"). It was submitted on the following stipulated facts:

1. Debtor, Roger E. Hope, filed a voluntary petition under chapter 7 of the Bankruptcy Code on February 11, 1986. Debtor's wife, Suzanne Hope, did not join with him in the filing of the voluntary petition.

2. At the time of the filing of the voluntary petition, the debtor was indebted to UNB in the approximate amount of $109,345.25, by virtue of judgments entered by confession, on November 9, 1985, against the debtor only.

3. Debtor owns the real property known as 171 Fretz Road, Telford, Pennsylvania (the "real property"), with his wife, as tenants by entireties.

4. On September 30, 1986, this court entered an order of discharge which discharged, *inter alia*, all debts listed in the debtor's schedules filed with the court, including the debt owed to UNB.

5. On September 30, 1986, this court entered an order approving the trustee's report and closing the case.

6. In early December of 1986, the debtor and his wife sought to obtain a home equity loan from Bucks County Bank ("the bank"), which loan was to be secured by the real property.

7. On or about December 19, 1986, the debtor was informed by John Moser, an employee of the bank, that the debtor was denied approval of the loan by the bank for the sole reason that in the opinion of the bank, the judgments obtained by UNB created an inchoate lien upon the real property, which inchoate lien could become choate and could be superior to the lien obtained by the bank.

8. The debtor desires to reopen the case to file an action which seeks to void the inchoate lien of UNB.

Section 522(f) of the Bankruptcy Code provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section if such lien is—

(1) a judicial lien....

The narrow question presented by this case is whether the UNB judgment against the debtor is a lien on his interest in the real property which he and his wife own as tenants by entireties. If so, and if the lien impairs the debtor's exemption, the lien is subject to avoidance under 11 U.S.C. § 522(f)(1). If not, there is no lien to avoid and no purpose would be served by reopening this case because 11 U.S.C. §§ 522(c), 524(a) would preclude UNB from making any postpetition effort to create a lien against the debtor's interest in the subject property.

Initially, I observe that both parties are taking positions in this matter which are seemingly internally inconsistent. The

debtor asserts that UNB does not have a lien against his interest in the entireties property by virtue of its judgment against him only. The debtor's counsel represented at the hearing held on the motion to reopen the case that UNB was listed as an unsecured creditor in the debtor's schedules. Yet, because a prospective post-discharge lender believes that UNB has a lien, the debtor requests that his case be reopened to avoid a lien that he believes UNB does not hold. UNB claims that the case need not be reopened because it does not have a lien. Yet, its counsel conceded that UNB filed a secured proof of claim during the chapter 7 proceedings and it has contested the debtor's request to reopen this case.

In *Napotnik v. Equibank & Parkvale Savings Association,* 679 F.2d 316 (3d Cir. 1982), the Court of Appeals concisely summarized the nature of a tenancy by the entireties in Pennsylvania:

> The common law of Pennsylvania retains many features of the traditional form of concurrent ownership of property known as tenancy by the entirety. While it is no longer true that husband and wife are considered one legal entity or that the husband has exclusive control over the property, it is still the case that when husband and wife own property as tenants by the entirety, they are each considered to be seized of the undivided whole and not by the share ("per tout et non per my"). Thus until the end of the marriage (by divorce or death of one spouse), neither spouse may compel partition nor sever the entirety property by a unilateral conveyance nor effect the survivorship interest of the other spouse. *Shapiro v. Shapiro,* 424 Pa. 120, 224 A.2d 164 (1966); *Madden v. Gosztonyi Savings & Trust Co.,* 331 Pa. 476, 200 A. 624 (1938); *Biehl v. Martin,* 236 Pa. 519, 84 A. 953 (1912).
>
> More to the point of this dispute, creditors of either spouse cannot acquire by judgment an enforceable lien on entirety property, or title therein by sale or execution. *Amadon v. Amadon,* 359 Pa. 434, 59 A.2d 135 (1948). *At most, a creditor of either spouse may obtain a presently unenforceable lien upon that spouse's expectancy of survivorship—a lien that becomes enforceable only when the other spouse dies.*

679 F.2d at 319 (emphasis added) (footnote omitted).

Interestingly, the court in *Napotnik* qualified its discussion by stating that a creditor holding a judgment against one tenant by the entireties "may" have, "at most," a presently unenforceable lien upon that spouse's expectancy of survivorship. In *Napotnik,* it was unnecessary for the court to be more precise because the creditor whose lien the debtor there sought to avoid held a judgment against both spouses. The case *sub judice,* however, does require a more exact determination of the rights created by UNB's judgment against the debtor.

Analysis of the issue must center on two venerable decisions of the Pennsylvania Supreme Court: *Fleek v. Zillhaver,* 117 Pa. 213, 12 A. 420 (1887) and *Beihl v. Martin,* 236 Pa. 519, 84 A. 953 (1912). The facts in *Fleek* were as follows. A judgment was entered against a husband only who owned real property jointly with his wife as tenants by the entireties. Subsequently, the husband and wife granted a mortgage on the property. After the wife died, the judgment creditor executed against the property. The issue before the court was whether the judgment lien or the mortgage lien had priority.

The court held that the judgment lien had priority:

> As against the wife, the mortgage was undoubtedly the first and indeed the only lien. As against the husband, the judgment was the first lien and the mortgage the second, simply because the judgment was obtained before the mortgage was given. Had the wife survived, the mortgage would certainly have had precedence to the exclusion of the judgment because the estate bound by the lien of the judgment was defeasible by the death of the husband before the wife. For the same reason if the husband survived the wife, the estate of the latter

was divested, and the mortgage only became operative against the husband because he had joined in its execution. But as to him it was not the first lien, he having become subject to a judgment at the time anterior to the giving the mortgage.

117 Pa. at 218; 12 A. at 421.

The analysis in *Fleek* was refined and limited in *Beihl.* In *Beihl*, a judgment was entered against a husband who owned property with his wife as tenants by the entireties. The spouses then sold the property to a third party. The purchaser brought an action to determine that his title was free of any contingent claims or encumbrances which could arise from the judgment. The Pennsylvania Supreme Court acknowledged, based on *Fleek*, that the judgment creditor held a lien on the husband's right of survivorship:

> We start in the discussion with an admission which [*Fleek*] compels, that the judgments here obtained against the husband were liens. But upon what? Certainly not upon the entirety that was in the husband, for the entirety of estate was in the wife equally with the husband, and, being in its nature indivisible, it would follow necessarily that any incumbrance upon the estate of the one would rest upon that of the other, a result which, of course, could not be justified or allowed except as the inherent attributes of the estate are to be wholly disregarded. There remains to the husband a right of survivorship by virtue of which, in case he survive the wife, while taking no estate, yet because the entirety in the wife is by her death extinguished, his entirety embraces every interest in the estate.... It was this contingent expectant interest in the husband that in contemplation when in [*Fleek*], this court held that the judgment against the husband acquired a lien at its inception.

236 Pa. at 56–27, 84 A. at 955–56. However, the court also held that the purchaser took the property free and clear of any lien of the judgment creditor. The court concluded that judgment creditor's lien on the husband's right of survivorship was unenforceable so long as the tenancy by the entireties was not severed and that the lien was subject to divestiture upon the death of the husband or the alienation of the property by the joint act of the spouses, reasoning as follows:

> A little reflection upon the nature of the estate by the entireties should make it apparent, we think, that while the estate continues it is utterly impossible for either party, without the other joining, to sell or assign his or her interest therein, even the expectancy of survivorship.... If, then, the husband cannot sell or dispose of his expectancy of survivorship, it follows that it may not be taken in execution....
>
> ... If the husband may not alien his right of expectancy, and if because of this the expectancy may not be taken in execution—since in either case it would be an appropriation of the wife's right ... to sell with the husband's consent—for equal reason a judgment operating as a lien upon the husband's expectancy would be an interference with the wife's right of alienation with the consent of the husband, except as that lien is divested by such sale. The owner of such lien must hold it subject to its possible extinction in either of two events, the predecease of the husband, or the alienation of the estate by the joint act of the parties. The efficiency of the lien depends upon the nonhappening of either.

236 Pa. at 527–29, 84 A. at 956.

I observe that there is an inherent tension in the *Beihl* analysis. If a spouse's interest in entireties property cannot be sold or aliened, voluntarily or involuntarily, why may one of the components of that spouse's interest in the property (*i.e.*, the right of survivorship) even be the subject of a lien at all? The *Beihl* court could have reached the same result on the facts before it by holding that the judgment against the husband gave the creditor no present lien but only the possibility of creating a lien in the event the husband survived the wife still seized of the property. However, this analysis was precluded by the result in *Fleek*. Consequently, the court accepted the premise that there was a lien upon the

right of survivorship, but found the lien presently unenforceable and subject to divestment upon alienation of the property by joint act of the spouses.

*Fleek* may have been further eroded by the later Pennsylvania Supreme Court decisions in *C.I.T. Corp. v. Flint*, 333 Pa. 350, 5 A.2d 126 (1939) (*"Flint"*) and *Murphey v. C.I.T. Corp.*, 347 Pa. 591, 33 A.2d 16 (1943) (*"Murphey"*). Both cases arose from the same underlying facts. The Flints, owners of a parcel of real property as tenants by the entireties, conveyed the property to a trustee. Prior to the conveyance, a judgment had been entered against the husband. Under the terms of the trust, the Flints retained a life estate in the property as tenants by the entireties with the remainder going to their two daughters. After the conveyance of the property to the trust, Mrs. Flint died.

In *Flint*, the judgment creditor asserted that the creation of the trust was a fraudulent conveyance. Relying on *Beihl*,[1] Pennsylvania Supreme Court rejected the argument:

> Since ... the owner of a judgment against the husband holds it subject to its possible extinction as a lien by a change of title caused either by the act of the parties or by the survivorship of the wife, he has no standing to complain of a conveyance which prevents the property from falling into his grasp. As long as the title was held by the entireties it was not an asset of [Mr.] Flint available for his creditors.... He was not under a legal duty to see that this possible interest was preserved for the benefit of his creditors.

333 Pa. at 356, 5 A.2d at 129. The court reserved decision on the extent of the creditor's lien on the property in light of the creation of the life estate by the entireties and the fact that the husband survived his wife, stating that issue would be ripe only after the creditor has executed on its judgment.

The case returned to the Supreme Court after the judgment creditor issued a writ of execution. In *Murphey*, the Supreme Court held that the judgment subjected Mr. Flint's life estate only, and not the remainder interest, tc the judgment lien and to execution.[2]

> [S]ince Flint and his wife could have conveyed to their daughters the complete title to the property notwithstanding defendant's judgment, they could, of course, grant them a less estate, namely, the remainder after the life interests which were created by the deed.

347 Pa. at 594, 33 A.2d at 18.

It is difficult to reconcile the results in *Fleek* and *Murphey*. In both cases, a judgment was entered against the husband prior to the spouses' joint conveyance of a part of their interest in the entireties property to a third party: in *Fleek*, the conveyance was in the form of a mortgage[3] and in *Murphey*, the conveyance was a remainder interest. In both cases, the husband then survived the wife. In *Fleek*, the judgment lien prevailed over the mortgage lien; in *Murphey*, the remainder interest prevailed over the judgment lien. There is no discussion in *Murphey* to indicate whether th court was overruling *Fleek sub silentio* or whether the court perceived some material distinction between the two types of

---

**1.** The *Flint* court interpreted *Beihl* as meaning that each spouse's interest in entireties property includes the right of survivorship, "which may be the subject of a *potential lien,, but such lien fastens upon the property itself only when the expectancy is realized.*" 333 Pa. at 355, 5 A.2d at 128 (emphasis added). The underscored phrasing quoted is consistent with the analysis that the judgment created no present lien of any kind. I note further, however, that in a later passage in *Flint*, the court observed that "the owner of a judgment against the husband holds it subject to its *possible extinction as a lien*" through the spouses' conveyance of the property

or the survivorship of the wife. 333 Pa. at 356, 5 A.2d at 129 (emphasis added).

**2.** Mr. Flint also argued that his life estate was exempt from execution because the trust instrument contained a spendthrift provision covering the life estates of the grantors. The spendthrift provision was held ineffective in *Murphey*.

**3.** In Pennsylvania, while a mortgage does not actually convey title, it does convey an interest in property. *See, e.g.*, 2 *Ladner on Conveyancing* § 12.07 (rev. 4th ed. 1979).

conveyances.[4] If *Fleek* is no longer good law, the theoretical underpinning for the conclusion in *Beihl*, that a judgment is a present but unenforceable lien on a spouse's right of survivorship, may be erroneous. If so, the judgment creditor against one spouse may have no present lien and only the possibility of obtaining a lien in the future.

There are many other reported cases in Pennsylvania applying the principles set forth in *Fleek*, *Beihl*, *Flint*, and *Murphey* in a variety of factual settings. *See, e.g., Miami National Bank v. Willens*, 410 Pa. 505, 190 A.2d 438 (1963); *Kossman v. Commonwealth, Department of Public Welfare*, 69 Pa.Cmwlth. 17, 450 A.2d 239 (1982); *Klopfenstein v. Chadbourne*, 105 Pa.Super. 530, 161 A. 642 (1932); *Weir v. Taylor*, 45 Pa.D. & C.2d 197 (C.P. Bucks 1967); *Marciniak v. Patrician*, 55 Lack. Jur. 125 (C.P.Lack.1953); *Columbia Trust Co. v. Gipe*, 51 Lanc.L.Rev. 17 (C.P.Lanc. 1947). However, none of the decisions provide any further guidance on the issue at hand.

The foregoing discussion is intended to demonstrate that the answer to the question before me (*i.e.*, whether UNB holds a present lien on the debtor's interest in the entireties property) may not be altogether clear under Pennsylvania law.[5] After reviewing the authorities, I am reluctant to

conclude, in the absence of a more definitive expression from the Pennsylvania appellate courts, that *Beihl's* express statement that a judgment creditor, such as UNB, has a lien on the judgment-debtor-spouse's right of survivorship in entireties property, is no longer the law in Pennsylvania. While that aspect of the analysis in *Beihl* may not have survived *Murphey* and may have outlived its usefulness, it is preferable that the Pennsylvania courts make that determination. *Cf. Kehr v. Raybestos-Manhattan, Inc.*, 522 F.Supp. 1070, 1074 (E.D.Pa.1981) (in diversity action, "the federal courts must remain careful to predict, but not form, state law").

Having concluded that UNB does hold a lien, the bankruptcy consequences are straightforward. Upon the filing of the bankruptcy petition, a bankruptcy estate was created. Included in that estate was the debtor's interest in the property held with his wife as tenants by the entireties. *Napotnik*, 679 F.2d at 318. Under 11 U.S.C. § 522(b), the debtor may exempt certain property from the estate. At this stage, the record is silent, but the parties have implicitly assumed that, before his case was closed, the debtor claimed as exempt his interest in the entireties property. Part of his interest—specifically, his right of survivorship—was encumbered by a lien arising from the UNB judgment.[6] As a

---

4. Thus, the prospective postpetition lender in the case at bench is prudent and rational in its fear in that UNB's lien could become superior to its mortgage.

5. Hence, the Third Circuit's heavily qualified statement that *"[a]t most, a creditor of either spouse may obtain a presently unenforceable lien upon that spouse's expectancy of survivorship...." Napotnik*, 679 F.2d at 315 (emphasis added).

6. The debtor's interest in entireties property includes more than his right of survivorship. At a minimum, it also includes his right of possession and his right to alienate the property with the consent of his wife. That the creditor's lien encumbers only a part of the debtor's interest in the property may be significant under 11 U.S.C. § 522(c). Section 522(c) provides that property exempted under that section "is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case" (with certain exceptions not relevant here). The debtor's exemption would encom-

pass those components of his interest in the entireties property not subject to UNB's lien. If the debtor were not to avoid the UNB lien in his bankruptcy case, if he and his spouse were to retain the property and if he then survived his wife, the "expansion" of UNB's lien from the debtor's right of survivorship to the other components of the debtor's interests in the property, as permitted by state law, arguably would run afoul of section 522(c). This argument may be buttressed by the legal fiction under Pennsylvania law that each spouse is seized of the whole estate from its inception and that, upon the death of the wife, the surviving husband takes no new estate in property. Rather, what occurs is a change in the nature of legal entity holding the property: "[In a tenancy by the entireties], although there are two natural persons, they are but one person in law.... [The death of one spouse] merely reduces the legal personage holding the estate to an individuality identical with the natural person." *Beihl*, 236 Pa. at 523, 84 A. at 954; *accord, e.g., Daley v. Hornbaker*, 325 Pa.Super. 172, 472 A.2d 703 (1984); *Western*

judicial lien, it is subject to avoidance under 11 U.S.C. § 522(f) if it impairs the debtor's exemption. *See* 11 U.S.C. § 101[30]. *See generally In re Ashe*, 669 F.2d 105 (3d Cir.1982), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1983).

At this stage of the proceedings, I am not asked to decide whether the inchoate lien should be avoided; the issue is only whether the case should be reopened to provide the debtor with the opportunity to move, pursuant to Bankr.Rule 4003(d), to avoid the UNB lien. I have previously held that "a debtor may reopen a bankruptcy case in order to initiate lien avoidance proceedings unless the creditor has been prejudiced by delay." *In re Quackenbos*, 71 B.R. 693, 696 (Bankr.E.D.Pa.1987). *See also In re Brennan*, 71 B.R. 706 (Bankr.E.D.Pa.1987). Here, UNB has not suggested that it has been prejudiced in any way by the debtor's delay. To the contrary it has asserted that it has no lien subject to avoidance.[7] Therefore, it is appropriate to reopen the case to allow the debtor to file a motion to avoid the judicial lien.

An appropriate order will be entered.

*Pennsylvania Bank v. Bradish*, 194 Pa.Super. 126, 166 A.2d 104 (1980); *Frederick v. Southwick*, 165 Pa.Super. 78, 67 A.2d 302 (1949). In effect, as a tenant by the entireties, the debtor's ownership interest which may be exempted in bankruptcy extends to his complete interest in the entireties estate, while UNB's lien covers only his right of survivorship. In this case, the debtor seeks to avoid the UNB judicial lien and does not wish to see whether future events will allow UNB's current, limited lien to "ripen" under state law. Therefore, I make no ruling regarding the effect, if any, of section 522(c).

I also note but do not decide whether the filing of a joint bankruptcy petition, *see* 11 U.S.C. § 302, is the equivalent to the joint alienation of property, within the meaning of *Beihl* and *Murphey*, so that the inchoate lien on the expectancy is terminated. In the case at bench, only the husband filed for bankruptcy.

7. Indeed, it may well be that a creditor with an inchoate lien, upon which (by definition) no execution is permitted, cannot suffer prejudice so long as the lien remains inchoate.