**In re Deborah L. BOGAN, Debtor.**

**William Pineo, Trustee, Movant,**

v.

**Deborah L. Bogan, Respondent.**

**No. 99–11181.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 18, 2003.

William Pineo, Meadville, PA, Trustee and Attorney Pro se.

Thomas A. Dill, Sharon, PA, for Deborah L. Bogan.

P. Raymond Bartholomew, Hermitage, PA, for Sheldon Gantt, Inc.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Deborah L. Bogan ("Debtor") filed a voluntary Petition under Chapter 13 of the Bankruptcy Code on July 27, 1999 ("Filing Date"). The case was converted from Chapter 13 to Chapter 7 on July 5, 2001. William Pineo, Esq. ("Trustee") serves as Chapter 7 Trustee. Before the Court are the Trustee's Objections to Amended Exemptions and the Trustee's Amended Objections to Exemptions.

### Facts

Debtor filed a proposed Chapter 13 plan dated September 23, 1999. The Plan ("Plan") contemplated monthly payments of $1,600 by the Debtor to the Chapter 13 Trustee and also required the Debtor to devote the proceeds of a personal injury claim and funds that Debtor was to receive from her father's decedent's estate to the Plan. Debtor commenced making $1,600 per month plan payments to the Chapter 13 Trustee on November, 1999. The Plan was confirmed on an interim basis as a form of adequate protection to allow the Chapter 13 Trustee to begin distributions to secured creditors pending Debtor's submission and confirmation of a further amended plan.

The Chapter 13 Trustee's records reflect the following monthly plan payments:

| | |
|---|---|
| 11–23–1999 | 1,600.00 |
| 12–06–1999 | 1,600.00 |
| 01–10–2000 | 1,600.00 |
| 02–07–2000 | 1,600.00 |
| 03–21–2000 | 1,600.00 |
| 05–04–2000 | 1,600.00 |
| 06–02–2000 | 1,600.00 |
| 07–07–2000 | 1,600.00 |
| 07–14–2000 | 3,916.12 |
| 08–15–2000 | 1,600.00 |
| 09–11–2000 | 1,600.00 |
| 10–10–2000 | 1,600.00 |
| 11–09–2000 | 1,600.00 |
| 12–13–2000 | 1,600.00 |

The Trustee's records further indicate that the source of the July 14, 2000 payment of $3,916.12 was a tax refund. All of the payments received by the Chapter 13 Trustee between November 23, 1999 and December 13, 2000 were distributed to secured creditors in accordance with the interim confirmation order.

Late in the year 2000, Debtor received $15,750.40 from the settlement of a personal injury action and an inheritance of $7,750 from her father's decedent's estate. Those proceeds were remitted to the Chapter 13 Trustee in January, 2001.

Debtor proceeded to file Amended Schedules and an Amended Plan on January 18, 2001. By Order dated February 2, 2001, Debtor was directed to file a further Amended Plan by February 12, 2001 and a hearing to consider confirmation of the plan was fixed for March 16, 2001. Despite the many delays and Debtor's inept attempts at presentation of a confirmable plan, it finally began to appear that the Chapter 13 case might actually be feasible and reach the confirmation stage.

The true nature of Debtor's deceptive and fraudulent activities would soon come to the Court's attention. On February 8, 2001, Sheldon Gantt, Inc. ("Sheldon Gantt") filed an Emergency Motion for Relief from Stay. Sheldon Gantt averred that Debtor had embezzled the sum of $414,841.42 while employed as its bookkeeper between October 28, 1999 and September 28, 2000. Sheldon Gantt had only recently learned of the bankruptcy and sought relief from the automatic stay to pursue a pending equity proceeding in the Court of Common Pleas of Mercer County, PA (the "State Court"). Before it learned of the Debtor's bankruptcy case, Sheldon Gantt had already obtained a State Court Order freezing Debtor's accounts and further requests for an accounting and judgment were pending.

By Order dated February 21, 2001, Sheldon Gantt was granted partial relief from the automatic stay "in order to proceed with actions in the Court of Common Pleas to trace or enjoin transfers of assets owned or controlled by Debtor, or to otherwise prevent the disappearance of assets." A further hearing on Sheldon Gantt's motion was continued until after the date that the Debtor was to appear for an examination before the Chapter 13 Trustee pursuant to Fed.R.Bankr.P.2004 (the "Rule 2004 Examination"). At the Rule 2004 examination, Debtor testified that she had entered a guilty plea for bank fraud in violation of Title 18, United States Code, Section 1344 (18 U.S.C. § 1344) under the first count of the indictment brought against her in the United States District Court for the Northern District of Ohio. As part of the plea, Debtor signed a Plea Agreement dated April 19, 2001 in which Debtor agrees that "she is, in fact, guilty of said offense." In paragraph 8 of the Plea Agreement, Debtor further acknowledges her "conduct and role in the offense" as follows:

A. Between on or about October 28, 1999, and on or about September 28, 2000, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendant, DEBORAH TODA–BOGAN, did knowingly execute and attempt to execute a scheme and artifice to defraud National City Bank, a federally-insured

financial institution, and to obtain money, funds, credits, assets, securities and other property belonging to Sheldon Gantt, Inc., and which were under the custody and control of National City Bank, by means of false and fraudulent pretenses, representations and promises.

B. Between April 1999 and October 12, 2000, the defendant, DEBORAH TODA–BOGAN, was employed as an accountant and bookkeeper at Sheldon Gantt, Inc., a general construction business located in Niles, Ohio. During the same time period, Sheldon Gantt, Inc. maintained a corporate bank account at National City Bank, a federally-insured financial institution.

C. The defendant's duties and responsibilities included operation of the Sheldon Gantt, Inc. computer system, preparing checks to pay employees, suppliers and subcontractors, as well as reconciling the monthly bank statements and preparing the corporation's general ledger.

D. It was part of the scheme and artifice that when the defendant, DEBORAH TODA–BOGAN, prepared corporate payroll and other checks at various times between October 28, 1999, and September 28, 2000, she prepared thirteen (13) additional Sheldon Gantt, Inc. checks totaling $414,841.62 (in individual amounts ranging from $15,256.00 to $46,555.72), payable to General Service Contractors, an Ohio corporation affiliated with Sheldon Gantt, Inc., which the defendant included in stacks of payroll and other checks routinely given to an officer of Sheldon Gantt, Inc. for signature.

E. After the checks payable to General Service Contractors were signed, the defendant fraudulently added the words "Deborah Toda–Bogan d/b/a" to the front the thirteen checks in question,

directly above the payee designation so as to make the checks appear to have been written to "Deborah Toda–Bogan d/b/a General Service Contractors." Subsequently, the defendant endorsed the forged and fraudulent checks and deposited them into a bank account the defendant maintained at First National Bank of Pennsylvania.

F. In an attempt to conceal her fraudulent activities, the defendant removed and destroyed the original forged canceled checks from the monthly National City Bank statements received by Sheldon Gantt, Inc.

G. The defendant, DEBORAH TODA–BOGAN, was interviewed by FBI agents on October 12, 2000, concerning the subject matter of this investigation. At that time, the FBI was aware of only 7 of the 13 checks in question, totaling approximately $220,000.00. During the interview, the defendant prepared a handwritten statement and orally stated to the agents that the seven checks presented for her review, constituted all of the fraudulent checks she prepared and negotiated while working at Sheldon Gantt, Inc. Subsequently, on October 25, 2000, a representative of the victim, Sheldon Gantt, Inc., contacted the FBI, and informed the case agent that 6 additional fraudulent checks had been uncovered, each appearing to have been prepared, forged and negotiated by the defendant, DEBORAH TODA–BOGAN, in the same manner as the first 7 checks.

H. As a result of the conduct of the defendant, DEBORAH TODA–BOGAN, Sheldon Gantt, Inc. has suffered losses in the approximate amount of $414,841.62.

*Plea Agreement,* ¶ 8.

Debtor's embezzlement scheme involved 13 different checks drawn on Sheldon

Gantt's business account and deposited into an account held by Debtor at the First National Bank of Pennsylvania.

The tabulation of the embezzled checks is as follows:

| Check No. | Amount | Issue Date | Date deposited at FNB/PA |
|---|---|---|---|
| 13146 | 24,875.85 | 10/28/99 | 11/10/99 |
| 13446 | 39,081.50 | 11/26/99 | 11/29/99 |
| 14014 | 23,139.00 | 1/21/00 | 1/31/00 |
| 14458 | 30,452.00 | 3/14/00 | 3/15/00 |
| 14665 | 15,356.00 | 4/6/00 | 4/7/00 |
| 14846 | 18,000.00 | 5/5/00 | 5/9/00 |
| 14975 | 37,483.00 | 5/25/00 | 5/30/00 |
| 15047 | 31,187.00 | 6/15/00 | 6/19/00 |
| 15165 | 39,629.25 | 6/26/00 | 6/29/00 |
| 15268 | 36,000.00 | 7/10/00 | 7/12/00 |
| 15331 | 42,846.10 | 7/27/00 | 7/31/00 |
| 15632 | 30,236.00 | 8/29/00 | 9/1/00 |
| 15938 | 46,555.72 | 9/28/00 | 9/29/00 |
| | 414,841.42 | | |

After Sheldon Gantt learned of the Plea Agreement, it filed a Motion for Supplemental Relief from Stay. A hearing on Motion for Supplemental Relief was held on June 22, 2001 following which the Court, by Order dated June 27, 2001, directed that the Chapter 13 Trustee shall not make any distribution from the cash held until further order of Court and, by Order dated July 5, 2001, converted the case to Chapter 7.[1]

The first Meeting of Creditors in the Chapter 7 case under 11 U.S.C. § 341 was originally scheduled for August 21, 2001. The meeting was adjourned several times because the Debtor was incarcerated in federal prison. Following application and Court approval, the meeting was held on February 19, 2002, with the Debtor attending by telephone. At said meeting, counsel for Sheldon Gantt questioned the Debtor regarding disposition of the embezzled funds. Debtor refused to answer on the ground of privilege from self-incrimination. The Trustee adjourned the meeting in order to determine what might be done. The § 341 meeting has never been closed and Debtor has yet to account for or return the embezzled funds that she stole.

On August 1, 2002, the Trustee filed Objections to Exemptions claimed by Debtor. In response, Debtor filed an Amended Schedule C, Property Claimed as Exempt. The Trustee then filed Objections to Amended Exemptions, specifically objecting to Debtor's claim of exemptions under 11 U.S.C. § 522(d)(11)(D) and (E). The Trustee subsequently filed his Amended Objection to Exemptions.[2] The Trustee asserts that Debtor is not entitled to exemption of any part of the estate.

We directed that the Debtor file a Brief on the issue of whether the Debtor is entitled to claim exemptions in this case. Debtor filed a Memorandum of Law on January 10, 2003. In the Memorandum, on the issue of entitlement to exemptions, Debtor states only that "[t]he Bankruptcy Code does not list any rule which would prevent the debtor on [sic] receiving her exemption schedule. Under 11 U.S.C. § 522(c) a creditor cannot attach any item which was exempt property after the bankruptcy."[3]

---

1. The Chapter 13 Trustee held the $15,750.40 from the personal injury action and $7,750 from the decedent's estate. The funds were subsequently remitted to the Chapter 7 Trustee who presently holds the funds.

2. Fed.R.Bankr.P. 4003(b) provides: "A party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Since the § 341 meeting was adjourned and has never been concluded and closed, all of the Trustee's objections to exemptions are timely.

3. Debtor also posits in the Brief that the time for filing an objection to discharge under § 523(a)(4) has passed and since § 523(a)(4) is the only section that is applicable, Debtor's restitution obligation is dischargeable. This is clearly an order of restitution issued in a prosecution under Title 18 of the United States Code. Debtor apparently fails to recognize that paragraph (a)(13) was added to 11

## Discussion

 "[A] central purpose of the [Bankruptcy] code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life'." *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) *quoting Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). The opportunity for a fresh start is limited to the honest but unfortunate debtor. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). The fresh start policy is for the honest poor, not for the roguish.

 "A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors." 4 *Collier on Bankruptcy,* 522.01 (15th ed.2003).

The debtor's exemption has been carefully protected by the Pennsylvania courts and cannot be waived. *Mayhugh v. Coon,* 460 Pa. 128, 331 A.2d 452 (1975); *Broadscope, Inc. v. Guilbert,* 23 D. & C.3d 109 (1982). There have been several policies advanced in support of this protection:

First, it is generally believed that a creditor, in forcing his debtor to repay a debt, should not be allowed to leave the debtor and his dependents in a state of abject poverty. Second, it is argued that society should not have to bear the ultimate burden of paying the debt and supporting the debtor...[who] will have to resort to public assistance for the support of himself and his dependents....Finally, it is argued that the exemption laws are necessary in order to provide a nucleus of assets around

which a debtor can begin to build a new life. Note *The Uniform Exemptions Act and Pennsylvania Law,* 39 University of Pittsburgh, Law Review 357, 358 (1977) (citations omitted).

*Waltz v. Zimmerman,* 38 Pa D. & C.3d 211, 1985 WL 5640 (Pa.Com.Pl.1985).

 "[I]n a bankruptcy proceeding...the bankruptcy court is concerned with the rights of the creditors as well as the debtor (thus, the bankruptcy court may 'tilt the scales' in favor of the creditors when the debtor has acted improperly)." *U.S. v. Feldman,* 338 F.3d 212, 220 (3d Cir.2003).

 The shield of exemption may be penetrated in extreme circumstances where there is fraudulent conduct or a clear showing of bad faith. *In re Stinson,* 221 B.R. 726 (Bankr.E.D.Mich.1998) (Bankruptcy Court has authority to deny claim of exemption in exceptional circumstances); *In re Duncan,* 201 B.R. 889 (Bankr.W.D.Pa.1996) (Court will set aside debtor's exemption pursuant to 11 U.S.C. § 105(a) where debtor acts in bad faith because not to do so would permit debtor to abuse the bankruptcy process); *In re Ballard,* 115 B.R. 190, 191 (Bankr.D.Minn. 1990) (Exemptions are appropriately disallowed in providing a remedy to the estate for wrongful conduct).

 In this case, Debtor voluntarily filed a bankruptcy Petition and sought the protection afforded by the Bankruptcy Code. While under the protection of this Court, Debtor embezzled over $400,000 from her employer. Following conversion of the case to Chapter 7, Debtor filed amended schedules. Debtor has never in the Amended Schedules or otherwise provided an explanation of where the stolen

U.S.C. § 523 in 1994. Paragraph (13) makes nondischargeable debts for payment of an order of restitution issued in a prosecution under Title 18 of the United States Code. Ac-

cordingly, Debtor's restitution obligation is not dischargeable and will not be discharged in the within bankruptcy case.

funds went or where they are. The actions of the Debtor and the activities undertaken during the pendency of this case are exceptional circumstances in which the bad faith of the Debtor is clearly demonstrated. The allowance of any exemption in the known property of the estate would constitute a further abuse of the bankruptcy process. The Trustee's Amended Objections to Exemptions will be sustained and Debtor will be denied any and all exemptions from the bankruptcy estate.

An appropriate Order will be entered.

### ORDER

This 18 day of December, 2003, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED that the AMENDED OBJECTION TO EXEMPTIONS filed by William Pineo, Trustee, is SUSTAINED and Deborah L. Toda–Bogan will not be permitted to claim an exemption in any property of the estate, nor will any of her exemption claims be allowed.