In re Mark J. LEACH, Debtor.

Mark J. Leach, Movant,

v.

Wells Fargo Home Mortgage, Respondent.

Mark J. Leach, Movant,

v.

Northwestern Mutual, Respondent.

Mark J. Leach, Movant,

v.

Pamela J. Wilson, Chapter 7 Trustee, Respondent.

Bankruptcy No. 09–21594–BM. Related to Doc. Nos. 117, 118, 119.

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 21, 2011.

Jonathan G. Babyak, Pittsburgh, PA, for Mark J. Leach.

Lauren J. Hoffman and Christopher K. Ramsey, Pittsburgh, PA, for Wells Fargo Home Mortgage.

Kelly A. Williams, Pittsburgh, PA, for Northwestern Mutual.

Pamela J. Wilson, Boston, MA, for the Chapter 7 Trustee.

### MEMORANDUM AND ORDER OF COURT

BERNARD MARKOVITZ, Bankruptcy Judge.

AND NOW, this **21th day** of **October, 2011,** upon consideration of the three motions brought by Mark Leach, the above-captioned debtor (hereafter "the Debtor"), to (a) approve a settlement with Wells Fargo Home Mortgage (Doc. No. 117), (b) avoid a judicial lien of Northwestern Mutual (Doc. No. 118), and (c) avoid a settlement with Pamela Wilson, the Chapter 7 Trustee in the instant bankruptcy case (Doc. No. 119);

and subsequent to notice and hearings on each of the above motions which were held on June 7, 2011;

it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

(a) the Debtor's motion to approve a settlement with Wells Fargo Home Mortgage (Doc. No. 117) is **GRANTED;**

(b) the Debtor's motion to avoid a judicial lien of Northwestern Mutual (Doc. No. 118) is **GRANTED,** but such judicial lien is only avoided as to the realty upon which sits the Debtor's residence; and

(c) the Debtor's motion to avoid a settlement with Pamela Wilson, the Chapter 7 Trustee in the instant bankruptcy case (Doc. No. 119), is **DENIED.** The Court so rules for the reasons briefly set forth below.

### I.

The Debtor, in Document No. 117, moves to have this Court approve a settlement (hereafter "the Motion to Approve Settlement") between himself and Wells Fargo Home Mortgage (hereafter "Wells Fargo") of litigation regarding a motion by Wells Fargo to reform a particular mortgage that the Debtor had granted to it in 1999 upon realty owned by the Debtor (hereafter "the Mortgage").

Such litigation commenced when the Debtor moved in this Court in June 2009 (at Doc. No. 21) for a determination that the Mortgage does not attach to real property upon which sits the Debtor's residence (hereafter "the Improved Property"), but only upon unimproved realty that is adjacent to the Improved Property (hereafter "the Unimproved Property"). The basis for such motion by the Debtor is that the property description attached to the Mortgage describes and references only the Unimproved Property and not also the Improved Property. Such motion by the Debtor prompted a response and cross-motion by Wells Fargo (at Doc. No. 36) to reform the Mortgage so that it

covers not only the Unimproved Property but also the Improved Property.

This Court, in a Memorandum Opinion and Order of Court dated February 23, 2010, denied Wells Fargo's cross-motion seeking the aforesaid reformation, and ruled that the Mortgage covers only the Unimproved Property and not also the Improved Property (Doc. No. 75). Wells Fargo appealed this Court's aforesaid decision to the United States District Court, which ultimately reversed such decision on July 30, 2010. The Debtor then appealed the District Court's decision to the United States Third Circuit Court of Appeals.

While the matter was pending in the Third Circuit Court of Appeals, and as a result of mediation that occurred simultaneously, the Debtor and Wells Fargo entered into a settlement of such matter (hereafter "the Mortgage Reformation Settlement"). The Mortgage Reformation Settlement has prompted, indeed is the subject of, the Motion to Approve Settlement that presently is before this Court. On June 28, 2011, which date is subsequent to when the Motion to Approve Settlement was heard by this Court, the Third Circuit dismissed the Debtor's appeal as essentially being premature.

By virtue of the Mortgage Reformation Settlement, the Mortgage will cover both the Improved Property and the Unimproved Property. By virtue of such settlement, those parties have also agreed that the principal balance due and owing on the note that is secured by the Mortgage will be $238,000. Finally, the parties have also thereby agreed that the Mortgage will have priority over another mortgage that the Debtor previously granted to the Mark J. Leach Irrevocable Trust in the Improved Property on January 28, 2005. According to the Debtor's Bankruptcy Schedules, the mortgage granted to the Mark J. Leach Irrevocable Trust secures a claim by such entity, which is obviously affiliated with the Debtor, of $140,000.

Northwestern Mutual has filed the only opposition to the instant Motion to Approve Settlement. Northwestern Mutual opposes such motion and the Mortgage Reformation Settlement, it would appear, on the ground that such settlement purportedly will operate to elevate in priority the Mortgage, as reformed post-settlement, over an intervening judicial lien that Northwestern Mutual obtained against the Debtor pre-petition in late 2006 and/or early 2007. Such judicial lien secures a judgment claim by Northwestern Mutual against the Debtor in the amount of $525,337. Along with its apparent contention that the Mortgage Reformation Settlement will operate to elevate in priority the Mortgage over Northwestern Mutual's judicial lien, Northwestern Mutual contends that the Debtor and Wells Fargo lack authority to enter into such a settlement that will negatively affect the rights of Northwestern Mutual.

The Court qualifies as "apparent" the basis set forth above upon which Northwestern Mutual opposes the Mortgage Reformation Settlement because, within such opposition, Northwestern Mutual also formally opposes such settlement on the ground that it will have the effect of eliminating, or will result in the avoidance of, Northwestern Mutual's pre-petition intervening judicial lien. Arguing that the Mortgage Reformation Settlement will result in the elimination or the avoidance of Northwestern Mutual's judicial lien goes farther, and is thus different, than merely contending that such judicial lien will be subordinated to the Mortgage.

Perhaps complicating the analysis regarding the instant Motion to Approve Settlement, contends the Debtor, are the facts that (a) the Debtor owns both

the Improved Property and the Unimproved Property with his non-debtor wife as tenants by the entirety, which fact the Court has previously found, *see* Feb. 23, 2010 Mem. Op. (Doc. No. 75), at 3, and (b) Northwestern Mutual has a judgment claim against the Debtor only and not against his non-debtor wife. Because of the two preceding facts, the Court holds that Northwestern Mutual's judicial lien is only inchoate in nature, that is Northwestern Mutual may not presently execute upon or enforce such lien, *see Napotnik v. Equibank and Parkvale Savings Association*, 679 F.2d 316, 319 (3rd Cir.1982) (interpreting Pennsylvania law), and such lien is subject to divestment either upon the death of the Debtor or the alienation of that property which is subject to such lien by the joint act of the Debtor and his non-debtor wife. *See In re Clawson*, 359 B.R. 118, 121 (Bankr.W.D.Pa.2007).[1] However, the Court holds that the inchoate nature of Northwestern Mutual's judicial lien will not operate to affect the analysis regarding the instant Motion to Approve Settlement for two reasons. First, an inchoate lien is nevertheless a property interest for which Northwestern Mutual presently retains concomitant legal rights. Second, even though the Mortgage Reformation Settlement essentially effectuates a grant by the Debtor and his non-debtor wife of a mortgage to Wells Fargo in the Improved Property, such joint act of alienation by the Debtor and his non-debtor wife is insufficient to divest Northwestern Mutual of its inchoate judicial lien. *See In re Hope*, 77 B.R. 470, 474–75 (Bankr.E.D.Pa. 1987) (noting that the Pennsylvania Supreme Court, in *Fleek v. Zillhaver*, 117 Pa. 213, 12 A. 420 (1887), held that a convey-

ance in the form of a mortgage by entireties tenants will not operate to divest a preexisting inchoate judicial lien). Having so held, the Court will proceed to analyze the Motion to Approve Settlement.

At the outset, the Court agrees with Northwestern Mutual that, since it is not a party to the Mortgage Reformation Settlement, such settlement cannot, by itself, operate to deprive Northwestern Mutual of any of its legal rights. Such settlement consequently cannot, by itself, legally effectuate the elevation in priority of the Mortgage, as reformed post-settlement, over Northwestern Mutual's pre-petition intervening judicial lien. Having so held, the Court notes that it interprets the Mortgage Reformation Settlement such that none of the terms thereof even propose to effectuate the aforesaid subordination of Northwestern Mutual's pre-petition intervening judicial lien. Therefore, Northwestern Mutual's objection, to the extent that it is based upon either their not being a signatory to the Mortgage Reformation Settlement or their interpretation of the terms thereof, is either unnecessary or is a contrivance by Northwestern Mutual to support its objection to the Mortgage Reformation Settlement and the instant Motion to Approve Settlement. In any event, such objection by Northwestern Mutual, to the extent that it is based upon either of such foregoing grounds, must be overruled.

■ The Court next holds—and consistent with what Northwestern Mutual argues—that, after the Court's approval of the Mortgage Reformation Settlement, without more, Northwestern Mutual's pre-petition intervening judicial lien will still

---

1. As set forth in *Clawson*, "Pennsylvania law still appears to be somewhat unsettled as to whether a judgment creditor obtains, solely by virtue—and at the time—of judgment," an inchoate judicial lien. *Clawson*, 359 B.R. at

120. The Court will henceforth accept, for purposes of the instant matter, that Northwestern Mutual obtained an inchoate judicial lien at the time when it received its judgment against the Debtor.

enjoy priority over Wells Fargo's Mortgage vis-a-vis the Debtor.[2] The Court so holds for two reasons. First, even though the District Court's decision granting a mortgage reformation in favor of Wells Fargo remains in place (and will presumably remain so given that the Debtor and Wells Fargo have agreed to the discontinuation of the Debtor's appeal in the Third Circuit), such does not have the effect of binding a bona fide encumbrancer without notice such as, for instance, Northwestern Mutual. *See Concord Liberty Savings and Loan Association v. Freedman*, 61 Pa.D. & C.2d 487, 490, 1973 WL 16635 at 2 (Pa.Com.Pl.1973) ("The effect of ... [a mortgage] reformation, if granted, is to relate back to and take effect from the time of the original execution of the instruments by the parties and such reformation is conclusive and binding upon all except bona fide purchasers or encumbrancers without notice and those standing in a similar relationship"). Second, and as set forth above, Northwestern Mutual's prepetition intervening judicial lien will not be subordinated to Wells Fargo's Mortgage simply by virtue of this Court's approval of the Mortgage Reformation Settlement.

█ Having held that this Court's approval of the Mortgage Reformation Settlement will not, by itself, serve to subordinate and thereby prejudice Northwestern Mutual's judicial lien, the Court can then address Northwestern Mutual's last basis for opposing such settlement, that is that such settlement should be disapproved because to do otherwise would ultimately result in the elimination or the avoidance of Northwestern Mutual's judicial lien. As an initial matter, the Court points out that, quite obviously, the Mortgage Reformation Settlement cannot, by itself, result in the elimination or the avoidance of Northwestern Mutual's judicial lien if such settlement, by itself, cannot, as set forth above, even serve to subordinate such judicial lien. Therefore, the Court suspects that what Northwestern Mutual must implicitly argue is that the Mortgage Reformation Settlement should be disapproved because to do otherwise would thereby enable the Debtor to then subsequently eliminate Northwestern Mutual's judicial lien by the use of another vehicle, which other vehicle is almost certainly the Debtor's motion to avoid such judicial lien pursuant to 11 U.S.C. § 522(f) (i.e., Doc. No. 118).

If the Court is correct that this is the type of prejudice that Northwestern Mutual relies on as a basis for objecting to the instant Motion to Approve Settlement, then such objection by Northwestern Mutual must be overruled. The Court so rules because such an argument by Northwestern Mutual essentially reduces to an argument—unacceptable by the Court— that the Mortgage Reformation Settlement should be disapproved if to do otherwise would then enable the Debtor to appropriately take advantage of a right that is given to him by the Bankruptcy Code, namely judicial lien avoidance under § 522(f). The Court, as just set forth, cannot accept such an argument by Northwestern Mutual because, if Northwestern Mutual suffers such prejudice, then it is simply the same kind of prejudice that is suffered by other judicial lien creditors whose judicial liens are avoided in bankruptcy, which prejudice is not actionable

---

**2.** Of course, Northwestern Mutual's inchoate judicial lien will not have priority over the Mortgage vis-a-vis the Debtor's non-debtor wife since such judicial lien encumbers entireties property and Northwestern Mutual does not have a judgment against such spouse. *See Hope,* 77 B.R. at 472.

by such creditors because it is permitted by the Bankruptcy Code.

Therefore, the Court will approve the Mortgage Reformation Settlement if, by itself, it is legally appropriate in all other respects. Unfortunately for Northwestern Mutual, the Court holds that the Mortgage Reformation Settlement, by itself, is legally appropriate in all other respects. The Court so holds because, if the Debtor were outside of bankruptcy, then he, along with his nondebtor spouse, could grant to Wells Fargo a mortgage in the Improved Property, which is essentially what is the end result of the Mortgage Reformation Settlement, notwithstanding that such mortgage would then be subordinated in priority to Northwestern Mutual's judicial lien as respects the Debtor.[3] What's more, the Debtor's nondebtor spouse, notwithstanding the Debtor's bankruptcy, can undoubtedly enter into a settlement with Wells Fargo that essentially grants to Wells Fargo such mortgage given that the Improved Property is entireties property and she is not in bankruptcy.

For all of the foregoing reasons, the instant Motion to Approve Settlement (Doc. No. 117) is granted.

## II.

██ In Document No. 118, the Debtor moves to avoid the judicial lien of Northwestern Mutual pursuant to § 522(f) on the ground that such judicial lien impairs the Debtor's exemption that he has taken in the Improved Property (hereafter "the Lien Avoidance Motion").

Although neither party appears to have pled as much, the Court understands Northwestern Mutual to also have a judicial lien upon the Unimproved Property.

The Debtor, however, has not moved to avoid any judicial lien that Northwestern Mutual might have upon the Unimproved Property. That the Debtor has not so moved is perhaps understandable since an examination of the Debtor's Bankruptcy Schedule C reveals that he has not taken any exemption in the Unimproved Property. Because the Debtor has not formally exempted any interest in the Unimproved Property, he, of course, could neither (a) demonstrate that any judicial lien that Northwestern Mutual might have in such property impairs an exemption that he has taken therein, nor (b) consequently prevail in any judicial lien avoidance action that is presently pending vis-a-vis a judicial lien upon the Unimproved Property.

Because the Debtor has neither taken an exemption in the Unimproved Property nor brought a judicial lien avoidance action regarding such property, the Court cannot, and thus will not, presently avoid any judicial lien that Northwestern Mutual might have upon such property. Therefore, if the Debtor wishes to avoid any judicial lien that exists upon the Unimproved Property, he will have to amend his exemptions so as to exempt such property, and then bring another § 522(f) judicial lien avoidance action regarding such property. Consequently, the Court will confine the remainder of its analysis regarding the Lien Avoidance Motion to Northwestern Mutual's judicial lien upon the Improved Property.

The Debtor contends that the fair market value of the Improved Property equals $200,000, which fair market value the Chapter 7 Trustee in the instant bankruptcy case accepted in a prior matter that was

---

**3.** In bankruptcy the grant of such a mortgage to Wells Fargo would make no sense if a bankruptcy trustee were to then avoid such lien by use of his or her strong arm powers under 11 U.S.C. § 544(a). However, the Chapter 7 Trustee in this case has not indicated that she will act to utilize such strong arm powers.

dealt with by the Court, *see* Feb. 23, 2010 Mem. Op. (Doc. No. 75), at 18. Although Northwestern Mutual opposes the Lien Avoidance Motion, Northwestern Mutual does not thereby disagree with or contest such $200,000 property valuation. Therefore, the Court shall henceforth accept as true that the fair market value of the Improved Property equals $200,000.

Because, as set forth earlier herein, the Debtor and Wells Fargo have agreed that Wells Fargo shall have a mortgage upon both the Improved Property and the Unimproved Property in the amount of $238,000, and since, as also set forth above, the Debtor has granted what is now a subordinated, albeit suspect, but nevertheless still-existent mortgage in the Improved Property to the Mark J. Leach Irrevocable Trust in the amount of $140,000, the Debtor does not have any equity in the Improved Property.

The Court also notes that the Debtor has taken a total exemption of $31,400 in the Improved Property via 11 U.S.C. § 522(d)(1) and (5), which exemption amount the Court allowed in a previous opinion and order notwithstanding its impropriety because nobody timely objected to such exemption. *See* Feb. 23, 2010 Mem. Op. (Doc. No. 75), at 19–20.

In light of all of the foregoing, and pursuant to the mathematical calculation that is called for under § 522(f)(2), all of Northwestern Mutual's $525,337 judicial lien impairs the Debtor's exemption in the Improved Property [i.e., $525,337 + $238,000 + $140,000 + $31,400 - $200,000 = $734,737; $734,737 > $525,337], thereby dictating that such judicial lien be avoided. Furthermore, the same result is obtained even if the questionable $140,000 mortgage of the Mark J. Leach Irrevocable Trust is removed from the analysis [i.e., $734,737 - $140,000 = $594,737; $594,737 > $525,-337]. Finally, the Court holds that the foregoing analysis is the appropriate one even though Northwestern Mutual's judicial lien enjoys priority over Wells Fargo's mortgage. The Court so holds because (a) Wells Fargo's mortgage is unavoidable by the Debtor under § 522(f), (b) Northwestern Mutual's judicial lien is thereby avoidable, and (c) a debtor, as a matter of law, can avoid a higher priority judicial lien if the same impairs such debtor's exemption if the reason, in part, for such impairment is the existence of a lower priority unavoidable encumbrance (such as a mortgage). *See* 4 *Collier on Bankruptcy*, ¶ 522.11[3] at 522–96 to 522–97 (Bender 2010); *In re Brinley*, 403 F.3d 415, 421–22 (6th Cir.2005); *In re Kolich*, 328 F.3d 406, 410 (8th Cir.2003).

█ Other than a presumed disagreement with the foregoing mathematical analysis under § 522(f)(2), Northwestern Mutual voices but one other objection to the Lien Avoidance Motion. Such remaining objection is that the Debtor, by virtue of fraud that he perpetrated upon Northwestern Mutual outside of the bankruptcy process, is barred from taking any exemption in the Improved Property and thereby utilizing such exemption to avoid Northwestern Mutual's judicial lien pursuant to § 522(f).

The aforesaid fraud of the Debtor upon which Northwestern Mutual so relies is the insurance fraud that the Debtor was found to have committed that ultimately resulted in Northwestern Mutual's $525,337 judgment against the Debtor and its judicial lien that is the subject of the Lien Avoidance Motion. Northwestern Mutual is correct that such fraud occurred outside of the bankruptcy process given that (a) such fraud obviously occurred prior to November 2006, which date is when Northwestern Mutual obtained its $525,337 judgment, and (b) the Debtor did not file for bankruptcy until March 9, 2009.

Northwestern Mutual relies upon the decision in *In re Bogan*, 302 B.R. 524 (Bankr.W.D.Pa.2003), as support for its position that fraud by a debtor outside of the bankruptcy process can operate to preclude both such debtor's exemptions and any judicial lien avoidance under § 522(f) by virtue of such exemptions. Unfortunately for Northwestern Mutual, it was only because the debtor in *Bogan* engaged in fraudulent conduct *in connection with the bankruptcy case* that such debtor suffered sanctions in the form of the denial of such debtor's exemptions. *See Id.* at 529–30. The decision in *Bogan* is consistent with both decisions that are cited therein, *see, e.g., In re Ballard*, 115 B.R. 190, 191–92 (Bankr.D.Minn.1990), and subsequent decisions that rely upon *Bogan, see In re Koss*, 319 B.R. 317, 322–23 (Bankr.D.Mass. 2005); *In re Woodford*, 403 B.R. 177, 190 (Bankr.D.Mass.2009). The *Bogan* decision does not support the denial of either the Debtor's exemptions or the Lien Avoidance Motion because the insurance fraud committed by the Debtor prior to November 2006 is not in any manner connected with the Debtor's bankruptcy case, which was commenced at least some three years later.

Therefore, and for all of the foregoing reasons, the Lien Avoidance Motion (Doc. No. 118) is granted. As a result of the grant of such motion, Northwestern Mutual's judicial lien is avoided pursuant to § 522(f), but such judicial lien is only avoided as to the Improved Property.

### III.

Finally, in Document No. 119, the Debtor moves to avoid a settlement (hereafter "the Motion to Avoid Settlement") with Pamela Wilson, the Chapter 7 Trustee in the instant bankruptcy case (hereafter "the Trustee").

On July 8, 2009, the Trustee filed a motion (at Doc. No. 30) to accept the payment of $6,500 in lieu of selling the Improved Property. Such motion was essentially a vehicle whereby the Trustee sought approval by this Court of a settlement between the Trustee and the Debtor the terms of which were that the Trustee would forego selling the Improved Property in return for a payment from the Debtor of $6,500 (hereafter "the $6,500 Settlement"). The $6,500 Settlement is the settlement that the Debtor now seeks to avoid via the Motion to Avoid Settlement.

The basis for avoiding the $6,500 Settlement, the Debtor contends, is that such settlement was predicated on a belief by the Debtor and the Trustee, at the time of such settlement, that the Debtor had equity in the Improved Property in excess of that which the Debtor could properly exempt. However, because of the Mortgage Reformation Settlement as described above, such excess equity in the Improved Property no longer exists, thereby, argues the Debtor, entitling him to avoid the $6,500 Settlement so that the Trustee must then return to him the aforesaid $6,500 payment.

The Debtor, in the Motion to Avoid Settlement, does not provide the Court with the precise legal basis for his entitlement to the avoidance of the $6,500 Settlement. For instance, the Debtor does not cite in support of such entitlement any authority—be it statutory, rule, case, or otherwise—for the right to avoid such settlement. Indeed, it appears to the Court that the Debtor does nothing more than state some sort of equitable basis for being permitted to now avoid the $6,500 Settlement. The Court concludes, as set forth below, that a proper framework exists for analyzing the relief that the Debtor seeks by way of the Motion to Avoid Settlement.

The Court granted the Trustee's motion that sought the approval of the $6,500 Settlement (hereafter "the Trustee's Motion to Settle") by Order of Court dated February 23, 2010 (Doc. No. 75). Because the $6,500 Settlement was approved by virtue of the entry of the February 23, 2010 Order of Court, the relief that the Debtor now seeks, that is the avoidance of the $6,500 Settlement, can only be obtained if the Debtor is entitled to relief from such court order.

■ The February 23, 2010 Order of Court is a final order with respect to the Trustee's Motion to Settle because such court order, *inter alia*, adjudicated the entirety of such motion. Because the February 23, 2010 Order of Court is a final order, relief therefrom can only be obtained by resort to Fed.R.Civ.P. 60(b), which is made applicable to the Motion to Avoid Settlement by virtue of Fed. R.Bankr.P. 9024.

■■ The Debtor cannot obtain relief from the February 23, 2010 Order of Court via paragraphs (1)–(3) of Fed.R.Civ.P. 60(b) because (a) relief thereunder must have been sought within one year after February 23, 2010, *see* Fed.R.Civ.P. 60(c)(1), 28 U.S.C.A. (West 2011), and (b) the Debtor did not file the Motion to Avoid Settlement with the Court until more than one year later on May 10, 2011. As for paragraphs (4)–(6) of Fed.R.Civ.P. 60(b), the Court summarily holds that the only one that could conceivably apply to a request by the Debtor for relief from the February 23, 2010 Order of Court on the basis of equity would be paragraph (5) thereof. Paragraph (5) of Fed.R.Civ.P. 60(b) provides that one can obtain relief from a final order if to apply it prospectively would no longer be equitable.

Unfortunately for the Debtor, the Court holds that, in addition to it not being inequitable to prospectively apply the February 23, 2010 Order of Court, it would be inequitable if the Court were to not prospectively apply such court order. The Court so holds first because (a) the Trustee was not a party to the Mortgage Reformation Settlement, which settlement, as set forth above, operates to change certain of the facts upon which the Debtor and the Trustee based their prior settlement, and (b) it would not be fair to force the Trustee, under such circumstances, to give up the benefit of her bargain.

The Court also so holds, and more importantly, because, had the Debtor entered into the Mortgage Reformation Settlement in July 2009 instead of then entering into the $6,500 Settlement with the Trustee, then the Trustee, by virtue of the exercise of her strong arm powers under 11 U.S.C. § 544(a), would almost certainly have been able to avoid the mortgage on the Improved Property that Wells Fargo obtained by way of the Mortgage Reformation Settlement. Had the Trustee moved to so exercise her strong arm powers under that circumstance, then the facts would have reverted back to precisely that which they were when the Trustee originally struck her deal with the Debtor. Pursuant to 11 U.S.C. § 546(a), the time within which the Trustee could move to so exercise her strong arm powers expired on March 11, 2011. It is only because the Debtor waited until after such date to file the Motion to Avoid Settlement—on May 10, 2011, to be precise—that the Debtor and Wells Fargo can now feel comfortable that they have avoided such a strong arm action by the Trustee. For the Court to allow the Debtor to take such advantage of the passage of time and then to also presently undo his $6,500 Settlement with the Trustee, the Court holds, would be grossly inequitable; for that same reason, the Court holds that it would not be inequitable to keep such settlement in place.

Therefore, the Court will not grant to the Debtor any relief from the February 23, 2010 Order of Court.[4]

Consequently, and for all of the foregoing reasons, the Motion to Avoid Settlement (Doc. No. 119) is denied.

---

4. As an aside, the Court declines to take any position at this time as to whether the Trustee is indeed presently foreclosed, by virtue of § 546(a), from avoiding the mortgage that Wells Fargo obtains via the Mortgage Reformation Settlement, which settlement, as set forth, is being approved by the Court by virtue of the entry of the instant Memorandum and Order of Court. For instance, the Court does not presently take any position as to whether the Trustee might be able to take advantage of some sort of equitable tolling argument to avoid the effect of § 546(a).